[Civil No. 274. Filed September 3, 1890.]

[32 Pac. 266, *sub. nom.* Richards *v.* Green.]

NAT. W. GREER (substituted for J. T. Lesueur), Treasurer and Ex-officio Tax Collector of the County of Apache, Plaintiff and Appellee, v. HUGO RICHARDS et al., Defendants and Appellants.

1. APPEAL AND ERROR—MOTION FOR NEW TRIAL—NECESSITY FOR REVIEW OF EVIDENCE—PUTNAM V. PUTNAM, ANTE, P. 182, 24 PAC. 320, FOLLOWED.—Error in admission of evidence is good ground for a new trial and it not appearing from the record that any motion for new trial was made in the court below that alleged error is not before us for consideration. *Putnam* v. *Putnam, supra,* followed.

2. COURTS—UNITED STATES SUPREME COURT—DECISIONS BINDING ON TERRITORIAL COURTS—CONSTRUCTION OF LOCAL STATUTES.—The territorial courts are completely subordinate to the United States Supreme Court. It is the court of final resort, and its decisions are binding and conclusive upon this court in the construction of our local statutes as well as in other cases.

3. INJUNCTIONS—BOND—DAMAGES—COUNSEL FEES—COMP. LAWS ARIZ. 1877, SECS. 2544-2555, CITED AND CONSTRUED.—Counsel fees are not recoverable upon an injunction bond conditioned, as provided by statutes, *supra,* that the plaintiff will pay such damages, not exceeding an amount to be specified, as such party may sustain by reason of the injunction, if the court finally decides that the plaintiff was not entitled to the injunction.

4. TAXES—INTEREST.—Taxes do not bear interest unless imposed by statute.

5. PLEADING—EVIDENCE—RELEVANCY—VARIANCE.—In an action upon an injunction bond evidence that the damages was interest on an indebtedness incurred by reason of deprivation of taxes is not permissible under a pleading alleging damages as interest on taxes enjoined.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Yavapai. James H. Wright, Judge. Reversed.

Wm. G. Hazledine, Solicitor, (E. M. Sanford, J. A. Williamson, of Counsel,) for Appellant.

The decisions of the supreme court of the United States are final and binding upon the territorial courts. The supreme court of the United States has held that counsel fees must not be allowed as part of the damages recoverable upon an injunction bond. *Oelricks* v. *Spain,* 15 Wall. 211. Whatever the holding may be in the various states of the Union, this decision of the supreme court settles the question for this territory.

The second proposition, that interest cannot be recovered, is also sound and fully sustained by the authorities. It will be conceded that interest can only be recovered on the strength of a contract to pay interest, or by statutory authority. That there was no contract is apparent from the complaint; that there was no statutory authority is evidenced by the law. Desty on Taxation says that taxes are not debts but obligations created by legislative authority, to which the personal consent or individual assent of the party charged is not required. They are not debts so as to be a proper subject of set-off, and cannot, as a general rule, be recovered in a common-law action as a debt. They do not bear interest, except when expressly so provided for by statute, and are not assignable. See Desty on Taxation, p. 9.

A tax is a charge upon persons or property to raise money for public purposes. It is not founded upon contract and does not establish the relation of debtor and creditor between the taxpayer and the state. See *Perry* v. *Washburn,* 20 Cal. 318; *Ormsby* v. *Louisville,* 79 Ky. 202; *Louisville etc. R. R.*

*Co.* v. *Hopkins,* 87 Ky. 605, 9 S. W. 497; *Homer* v. *Kirkwood,*
25 Miss. 95; *State* v. *Winona and St. Paul Land Co.,* 39 Minn.
380, 40 N. W. 166.

Baldwin & Johnson, for Appellee.

KIBBEY, J.—On the fifth day of February, 1886, the
Atlantic and Pacific Railroad Company, upon proper com-
plaint, obtained in the district court for the third district
a temporary injunction restraining the treasurer of Apache
County from selling certain lands and the improvements
thereon, and the culverts, bridges, grading, rock and earth
cuts and fills, etc., property of the said railroad company
then advertised by said treasurer for sale for the payment
of taxes assessed and levied against said railroad company.
On said day said railroad company caused to be executed
a bond, with Hugo Richards and Edwards Wells, the ap-
pellants herein, as sureties, in the sum of $9,732, conditioned
for the payment to said treasurer of such damages as he
might sustain by reason of said injunction, if the court should
finally decide that said railroad company was not entitled
thereto. On the ninth day of June, 1887, a motion to dis-
solve the temporary injunction was denied. On the 10th of
November, 1887, after a trial upon the merits, the injunction
was dissolved, and the complaint dismissed. The railroad
company thereafter appealed from that judgment to this
court, and the appeal was there, by the appellant, dismissed.
See *Railroad Co.* v. *Lesueur,* 2 Ariz. 428, 19 Pac. 157. This
action is for the recovery on the injunction bond of the dam-
ages sustained by said treasurer by reason of the injunction.
Appellee alleged in his complaint that by reason of the
injunction he was prevented from collecting taxes amounting
to $9,171.44, and penalty and costs amounting to $560, from
the ninth day of February, 1886, until the twenty-sixth day
of January, 1888, and that his damages occasioned thereby
are $1,863, interest on said taxes and penalties, and the
further sum of $1,680, expended as attorneys' fees in obtain-
ing the dissolution of said injunction, and $400 expended in
procuring the attendance and testimony of witnesses in and
about the obtaining of the dissolution of the injunction. The

appellants demurred to the complaint,—1. Because appellee was not entitled to recover attorneys' fees as a part of his damages; and 2. That the appellee was not entitled to recover interest on taxes, penalties, and costs. The demurrer was overruled. There was a trial, and judgment for appellee for the sum of $209.89 and costs of suit, from which this appeal is taken. The overruling of the demurrer and the admission of certain evidence at the trial are assigned as errors.

As the error in admitting evidence, if error it was, was good ground for a new trial, and it not appearing from the record before us that any motion for a new trial was made in the court below, for that or any other cause, that alleged error is not before us for consideration. *Putnam* v. *Putnam, ante,* p. 182, 24 Pac. 320.

The only question properly presented for our consideration is the correctness of the ruling of the court upon the demurrer to the complaint. The statute upon the subject of injunctions, in force at the time the bond in suit was executed, was copied from the statute of California. Comp. Laws Ariz. 1877, secs. 2547-2555; Code Cal. (Hittell), secs. 10525-10533. It is by that statute prescribed that the undertaking shall be conditioned "to the effect that the plaintiff will pay to the party enjoined such damages, not exceeding an amount to be specified, as such party may sustain by reason of the injunction, if the court finally decide that the plaintiff was not entitled" to the injunction. Substantially similar provisions are found in the statutes of nearly all the states and territories. It is conceded by appellants that it is held by the courts in a very large number of states that counsel fees may be allowed in suits upon injunctions under statutes similar to our own; but they contend that we are bound by the decisions of the supreme court of the United States, and cite *Oelricks* v. *Spain,* 15 Wall. 211, where that court denies the right to recover counsel fees as part of the damages in such a suit. We do not entertain any doubt but that, had the statute provided that attorneys' fees incurred by the defendant in procuring the dissolution of a temporary injunction should be an element of damage recoverable in a suit on the bond, such provision would have been valid. But the

statute has failed to do so, and we are left to determine the question by reference to the analogies of the law and a consideration of sound public policy; and in this, inasmuch as this court has never passed upon the question, we are to be guided largely by the declarations of other courts. As we have said, the preponderance of authority in the state courts is that counsel fees are recoverable in a suit upon an injunction bond in a case like this. But the weight we may attach to the decisions of different courts as authority depends to a considerable degree upon the relation in which we stand to these courts. By virtue of the provision in the constitution of the United States that Congress may make needful rules and regulations respecting the territory of the United States, (Const., art. 4, sec. 3, subd. 2,) or that that power is incident to the right to acquire territory, Congress has undertaken to provide for the government of the territories (*Insurance Co.* v. *Canter,* 1 Pet. 511; *Clinton* v. *Englebrecht,* 13 Wall. 434-447; *Nelson* v. *United States,* 30 Fed. 112). The theory upon which the governments of the various territories have been organized has been to leave to the inhabitants all powers of self-government consistent with the supremacy of national authority, and within the limits prescribed by the organic acts. *Clinton* v. *Englebrecht,* 13 Wall. 434. By the organic act of Arizona the legislative power extends to all rightful subjects of legislation not inconsistent with the laws and constitution of the United States. Rev. Stats. U. S., sec. 1851. It is provided that the supreme court of the territory shall consist of the chief justice and two associate justices, to be nominated by the President; that the territory shall be divided into three districts, and a district court shall be held in each district by one of the supreme judges. By section 1908 the judicial power in Arizona is vested in a supreme court and such inferior courts as the legislative council may by law prescribe. These courts are in no sense United States courts, although there is vested in the district courts of the territories the exercise, in all cases arising under the constitution and laws of the United States, of the same jurisdiction as is vested in the circuit courts of the United States. *Clinton* v. *Englebrecht,* 13 Wall. 434-447; *Good* v. *Martin,* 95 U. S. 98; *Reynolds* v. *United States,* 98 U. S. 154; *Ex parte Harding,*

120 U. S. 782, 7 Sup. Ct. Rep. 780. It is, however, provided by the organic act that writs of error and appeals from the final decision of the supreme court of this territory to the supreme court of the United States, shall be allowed where the amount in dispute, exclusive of costs, shall exceed the sum of five thousand dollars; and this not only in cases arising under the constitution and laws of the United States, but those arising under the local laws of the territory. And herein is a very plain, and we think important, distinction to be observed between the relation of the courts of the territories to the supreme court of the United States, and the relation of the state courts to that court. The state courts are subordinate to the supreme court of the United States only in cases involving federal questions, and not in those involving only local questions. The territorial courts are completely subordinate to the United States supreme court. It is the court of final resort, and its decisions are binding and conclusive upon us. The supreme court of the territory is really but an intermediate appellate court, and this is in pursuance of the theory that the governments of territories shall always be subject to the supervision of the national authority.

It is argued that the supreme court of the United States, in construing the local laws or statutes of the states, have almost universally adopted their construction given by the state courts, and that, therefore, if this court should determine the question before us, the supreme court of the United States would adopt our determination, notwithstanding they have held otherwise in another case. This we believe is the rule with reference to the construction of state laws, and it follows naturally from the relation existing between the state courts and the federal courts. The states have a right to determine what the rights of their citizens shall be among themselves, subject only to the limited sovereignty of the national government; and it would be a strange doctrine if the federal courts should, as between the citizens of one state and those of another within the territorial limits of the latter, by its judgment, accord to the former greater or different rights, as against such citizen, than a citizen of the state might have. The federal courts have no supervisory power over the local administration of justice in the states; and

that different rights may not flow from the same transaction, depending simply upon a difference in the tribunal where it is sought to enforce them, the federal court should, and they have, whenever called upon to enforce rights depending upon local laws, adopted and followed the construction given them by the state courts. They adopt not only the construction placed by the local courts upon local statutes, but also the declarations of those courts as to the common law. As we have said, the supreme court of the United States cannot review the decisions of the state courts upon matters of purely local concern, arising under local laws. But our organic act confers upon every citizen of this territory the right of appeal, first to the territorial supreme court, and thence to the supreme court of the United States. To say that that court will be bound by the decisions of this court upon matters involving the construction of local laws is simply to divest the right of appeal of any benefit to the appellant. To argue that a litigant may appeal from this court to the supreme court of the United States, and then that that court will adopt the construction placed by this court on the law involved, and therefore affirm the judgment, is, it seems to us, an absurdity. This is a condition that cannot arise between the state and federal courts. It is a condition expressly created by Congress to enable the national government to retain and exercise its supervisory control. These cases, then, cited by appellee to the effect that the supreme court of the United States will adopt the construction of the local laws of the states placed thereon by the courts of the states are not pertinent to the question before us. Appellee cites *Good* v. *Martin,* 95 U. S. 98, in support of the theory that that court will adopt the construction of the territorial courts. But no question of construction was involved in that case. The question was as to the power of the territorial government to make a different rule as to the competency of witnesses than that prevailing in the courts of the United States, and the court says that such power existed, and was exercised. And so in *Reynolds* v. *United States,* 98 U. S. 154, it was not a question of adherence to the construction of certain laws by the territorial court. It was whether grand juries were to be impaneled under the provisions of the territorial or

the United States statutes. And in *Hornbuckle* v. *Toombs,* 18 Wall. 648, the question was not one of construction, but of power of the territorial legislature to blend common law and equitable jurisdiction and procedure in the courts of the territory. And in *Ex parte Harding,* 120 U. S. 782, 7 Sup. Ct. Rep. 780, it was decided that an alien was a competent grand juror because a statute of the territory made him so. It was not a question of adherence to a construction placed on a law by the territorial court. While we concede to the courts of California, Missouri, New York, Iowa, Indiana, Louisiana, etc., the greatest respect, we are bound by *Oelricks* v. *Spain,* 15 Wall. 211. The demurrer should have been sustained, and the item for attorneys' fees stricken out.

We next come to the consideration of the allowance of interest on the amount of tax due for the time the county was deprived thereof. We are relieved of much labor by the concessions of counsel for appellee. It is conceded by appellee that taxes do not bear interest unless imposed by statute, and the statute under which the taxes in dispute were levied made no such imposition. The allegation of the complaint is "that this plaintiff, as such treasurer and *ex-officio* tax collector, and in his official capacity as such, has by reason of the said injunction sustained damages in the following sums, to wit: $1,863, interest on said taxes, and penalty and costs, from the ninth day of February, 1886, till the twenty-sixth day of January, 1889; $1,860, . . . attorney fees; . . . and $400 expended in securing the attendance and testimony of witnesses; . . . and these are all the items of damages alleged. On that the court, in its finding, assesses damages . . . in the further sum of $1,702.89, as damages for and on account of interest on the taxes enjoined." And this in the face of appellee's concession in his brief that "we instantly admit that taxes-do not bear interest, and, as the question is so clear that its veiy simplicity banishes argument, we immediately flee from appellants' offer to discuss it." It is argued by appellee that the damages allowed by the court below, and designated by the court as "interest on the taxes enjoined," were not really so, but was the interest on the indebtedness of the territory and county incurred by reason of their deprivation of the sum due as taxes. It is

enough to say that under the pleadings evidence to sustain such a view was not permissible, and the finding of the court below indicates that such was not the theory on which the case was tried. The demurrer on the ground that taxes do not bear interest should have been sustained and that allegation stricken out. 1 Desty on Taxation, p. 9; *Ormsby* v. *Louisville*, 79 Ky. 202; *Railroad Co.* v. *Hopkins Co.*, 87 Ky. 605, 9 S. W. 497. For the errors in the record we have noted, the case must be reversed, and the district court is directed to sustain the demurrer to the complaint.