LINDEBERG et al. v. HOWARD et al.

(Circuit Court of Appeals, Ninth Circuit. June 20, 1906.)

No. 1,219.

INJUNCTION—BONDS—DAMAGES—ELEMENTS—ATTORNEY'S FEES.

In an action on an injunction bond given in a court in the territory of Alaska, attorney's fees expended in obtaining a dissolution of the injunction do not constitute a proper element of damage.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 597.]

In Error to the District Court of the United States for the Second Division of the District of Alaska.

This is an action to recover damages upon an undertaking for an interlocutory injunction in the suit of Lindeberg et al. v. Howard et al. The bond in question was given to defendants in error for the purpose of indemnifying them from loss and damage, if any resulted, from the procuring of the temporary injunction restraining them from discharging or causing to flow into

the Moonlight Springs mud, dirt, tailings, or muddy water, or from in any manner polluting the waters of said springs or creek. In the complaint it is alleged that the defendants in error were, during the winter of 1902 and 1903, engaged in taking out dumps of pay dirt and gravel from the Grant placer mining claim, under a lay thereon from the Pacific Coal & Transportation Company, which expired on June 1, 1903; that at the time the restraining order was served upon the defendants in error they were compelled to cease mining operations by reason thereof; that defendants in error then had out of said Grant placer mining claim and ready to wash out and sluice the gold therefrom dumps of pay dirt and gravel of the value of $2,500. The restraining order was issued May 18, 1903, and the lay expired on June 15th, following. It is alleged that the said restraining order was wrongfully caused to be issued by the plaintiffs in error. The conditions of the injunction bond are: "If the said plaintiffs shall pay all costs and disbursements that may be decreed to the said defendants, their agents, servants, and employés, and such damages, not exceeding the sum of $2,500, as they, or any of them, may sustain by reason of said injunction if the same be wrongful, or without sufficient cause, then this obligation shall be void; otherwise it shall remain in full force and effect." The rule to show cause why the injunction should not issue was set for the 19th, and was then heard and taken under advisement, and, on the 9th of June it was dissolved, and the court refused to issue an injunction pendente lite. When the restraining order was issued the defendants in error in this action were using the water caused by the melting snow from the watershed of Anvil Mountain, and the supply of said water was then ample to sluice said dumps and extract the gold therefrom, but at the time of the dissolution of the restraining order there was no water for said purpose, nor was there during the year 1903; that during the year 1903, the said dumps were wasted and destroyed, much of the dirt caving back into the shafts and drifts on said mine, and that, by reason of said restraining order and the loss of said dumps, the plaintiffs claimed damages; they also claimed damages for 22 days' loss of time resulting from said restraining order, and also claimed damages for reasonable attorney's fees incurred by them in defending against said restraining order, and in procuring its dissolution.

The court charged the jury, among other things, as follows: "If you find from the evidence that the plaintiffs had a dump or several dumps of pay dirt and gravel on the Grant placer mining claim * * * during the spring of 1903, and that they were enjoined at the suit of the defendants when engaged in washing out and extracting the gold therefrom, and you further find from the evidence that plaintiffs could have sluiced out said dumps and extracted the gold therefrom between the date when plaintiffs were enjoined from so doing in effect, and the date of the dissolution of the restraining order, and that thereafter said dumps and their values were wholly or partially lost to the plaintiffs as the proximate result of said restraining order, then I instruct you to find for the plaintiffs in such sum as you may find from the evidence plaintiffs were damaged thereby. * * *. I further instruct you that the reasonable value of attorney's fees contracted by plaintiffs in moving to dissolve said restraining order is, under the statute of Alaska relating to injunction bonds, an element of damage to be considered by you, and if you find from the evidence that plaintiffs employed an attorney for the purpose of moving to dissolve said restraining order, that you should also find for the plaintiffs in such sum as you may find from the evidence was a reasonable attorney fee for such purpose. * * * The jury are further instructed that the defendants in this action are not responsible for any of the acts of third parties, not in privity with them, who may have sluiced up said dumps for pay gravel, or any parts of the same, and appropriated the proceeds thereof. The jury are further instructed that the plaintiffs are not entitled to compensation for the loss of said dumps of pay gravel or the loss of any part thereof, which was not directly and proximately caused by the issuance and continuance in force of the restraining order mentioned in the complaint. The jury are further instructed that if the disappearance or destruction of the plaintiffs' dumps was caused by the negligence or inat-

tention of the plaintiffs in not sluicing up said dumps, or any part of them, when water became available to them for that purpose, if it did become so available afterward, then the defendants are not chargeable with the loss properly due to the negligence or inattention of said plaintiffs, and that the defendants are not responsible for the disappearance or loss of said dumps or any part thereof, unless such disappearance or loss were directly and proximately caused by said restraining order or injunction. * * * For the breach of the injunction bond or undertaking, it will be your duty to award the plaintiff in your verdict at least nominal damages, and I instruct you that you may assess nominal damages at the sum of $1, or other like small sum of money. And in determining whether you shall render a verdict for the plaintiff for more than nominal damages you will consider: (1) The loss, if any, accruing to the plaintiffs from the disappearance or destruction of the plaintiffs' dumps, if said dumps were lost to them or destroyed as the natural, direct and proximate result of the issuing of the restraining order and not as the result of the acts of other persons, not parties to this case; (2) the loss of time and the expense, if any, to which the plaintiffs were put in the searching for and procuring of testimony to be used at the hearing of the order to show cause why the injunction pending in the former action should not issue, and of the motion to dissolve the restraining order; (3) what is a reasonable attorney's fee, as shown by the evidence, which the plaintiffs incurred in answering the order to show cause, and in procuring a dissolution of the restraining order. The amount of damages, which you may find, should not in any event exceed the amount prayed for in the complaint, to wit, $2,500." The jury found a verdict in favor of defendants in error in the sum of $2,500. Plaintiffs in error make 28 specific assignments of error, many of which are duplicates. They group them in their brief, under seven different heads.

Albert Fink, J. C. Campbell, W. H. Metson, F. C. Drew, C. H. Oatman and Ira D. Orton, for plaintiffs in error.

W. Lair Hill, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after making the foregoing statement, delivered the opinion of the court).

Did the court err in holding that attorney's fees were an element of damage to be considered by the jury in a case of this character? The statute of Alaska provides:

"Sec. 384. An injunction may be allowed by the court or judge thereof at any time after the commencement of the action and before judgment. Before allowing the same the court or judge shall require of the plaintiff an undertaking, with one or more sureties, to the effect that he will pay all costs and disbursements that may be decreed to the defendant, and such damages, not exceeding an amount therein specified, as he may sustain by reason of the injunction if the same be wrongful or without sufficient cause." Act June 6, 1900, c. 786, 31 Stat. 397.

It will be observed that it is not provided in this statute that attorney's fees incurred by the defendant in procuring the dissolution of the injunction should be an element of damage recoverable in a suit upon the bond. In the absence of such a provision the question arises whether, under the general law and the consideration of sound public policy, such fees are an element of damage proper to be considered by the jury. The terms of the bond are that plaintiffs shall pay "such damages * * * as they or any of them may sustain by reason of

said injunction if the same be wrongful or without sufficient cause." This was not, of course, an obligation to pay damages remote, conjectural, or speculative in character, but only to pay such damages as were the actual, natural, and proximate result of the granting of the restraining order or injunction. 2 High on Inj. (3d Ed.) § 1663.

An examination of the authorities will show that the state courts under similar statutes, or upon similar conditions of the injunction bond, have almost universally held that attorney's fees, under certain limitations, are proper elements of damage. There are some few exceptions to this rule, notably in the State of Pennsylvania.

In Sensenig v. Parry, 113 Pa. 115, 119, 5 Atl. 11, 12 ; the court said:

"There was no error in disallowing the evidence of counsel fee paid by the plaintiff. It was not such a legal damage as is specified in the condition of the injunction bond, as to permit a recovery therefor."

The United States Supreme Court has universally held that such fees cannot be allowed as damages in a suit upon the injunction bond. The views expressed by the state courts are sufficiently outlined and expressed in 2 High on Injunctions, §§ 1685, 1686.

"A reasonable amount of compensation paid as counsel fees in procuring the dissolution of an injunction may be recovered in an action upon the bond * * * if the injunction was improperly or wrongfully sued out, the amount being limited to fees paid counsel for procuring the dissolution, and not for defending the entire case. Counsel fees in such cases are regarded as a proper subject of consideration in estimating the damages incurred, the loss being as direct and immediate as any other. [Citing many cases.] * * * § 1686. The allowance of counsel fees as damages upon dissolving an injunction is based upon the fact that defendant has been compelled to employ aid in ridding himself of an unjust restriction, which has been placed upon him by the action of plaintiff."

On the other hand, the Supreme Court, in Oelrichs v. Spain, 15 Wall. 211, 230, 21 L. Ed. 43, 45, said:

"The decree of the court below was preceded by the report of a master, which the decree affirmed and followed. Upon looking into the report we find it clear and able, and we are entirely satisfied with it, except in one particular. We think that both the master and the court erred in allowing counsel fees as a part of the damages covered by the bonds. In Arcambele v. Wiseman, 3 Dall. 306, 1 L. Ed. 613, decided by this court in 1796, it appeared 'by an estimate of the damages upon which the decree was founded, and which was annexed to the record, that a charge of $1,600 for counsel fees in the courts below had been allowed.' This court held that it 'ought not to have been allowed.' The report is very brief. The nature of the case does not appear. It is the settled rule that counsel fees cannot be included in the damages to be recovered for the infringement of a patent. They cannot be allowed to the gaining side in admiralty as incident to the judgment beyond the costs and fees allowed by the statute. In actions of trespass where there are no circumstances of aggravation, only compensatory damages can be recovered, and they do not include the fees of counsel. The plaintiff is no more entitled to them, if he succeed, than is the defendant if the plaintiff be defeated. Why should a distinction be made between them? In certain actions ex delicto vindictive damages may be given by the jury. In regard to that class of cases this court has said: 'It is true that damages assessed by way of example may indirectly compensate the plaintiff for money expenses in counsel fees, but the amount of these fees cannot be taken as the measure of punishment or a necessary element in its infliction.' Day v. Woodworth, 13 How. 370, 371, 14 L. Ed. 181. The point here in question

has never been expressly decided by this court, but it is clearly within the reasoning of the case last referred to, and we think is substantially determined by that adjudication. In debt, covenant, and assumpsit, damages are recovered, but counsel fees are never included. So, in equity cases, where there is no injunction bond, only the taxable costs are allowed to the complainants. The same rule is applied to the defendant, however unjust the litigation on the other side, and however large the expensa litis to which he may have been subjected. The parties in this respect are upon a footing of equality. There is no fixed standard by which the honorarium can be measured. Some counsel demand much more than others. Some clients are willing to pay more than others. More counsel may be employed than are necessary. When both client and counsel know that the fees are to be paid by the other party there is danger of abuse. A reference to a master, or an issue to a jury, might be necessary to ascertain the proper amount, and this grafted litigation might possibly be more animated and protracted than that in the original cause. It would be an office of some delicacy on the part of the court to scale down the charges, as might sometimes be necessary. We think the principle of disallowance rests on a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy."

In Tullock v. Mulvane, 184 U. S. 497, 511, 22 Sup. Ct. 372, 46 L. Ed. 657, the case was brought before the court by writ of error to the Supreme Court of the state of Kansas. The bond was given in a suit in the Circuit Court of the United States. The Supreme Court held that the claim of immunity from liability for attorney's fees as one of the elements of damage under the injunction bond presented a federal question, which was incorrectly decided by the court below in holding that it was proper to award the amount of such fees in enforcing the bond; that a bond given in pursuance of a law of the United States is governed, as to its construction, not by the local law of a particular state, but by the principles of law as determined by this court, and operative throughout the courts of the United States.

Regarding the questions under review in that case, the court said:

"It remains only to consider whether the attorney's fees were properly allowed by the court below as an element of damages on the bond. That they were not, is settled."

And then quotes at length from Oelrichs v. Spain, supra.

In the further course of the opinion the court held that this question was a matter of general law. It said:

"It is at once conceded that the decision by a state court of a question of local or of general law involving no federal element does not as a matter of course present a federal question. But, where, on the contrary, a federal element is specially averred and essentially involved, the duty of this court to apply to such federal question its own conceptions of the general law we think is incontrovertible." Avery v. Popper, 179 U. S. 305, 315, 21 Sup. Ct. 94, 45 L. Ed. 203.

The judgment of the Supreme Court of Kansas was reversed. The case of Missouri, Kansas & Texas Ry. Co. v. Elliott, 184 U. S. 531, 22 Sup. Ct. 446, 46 L. Ed. 673, affirmed, and followed the rules announced and views expressed in Tullock v. Mulvane, supra.

As was said by the court in Greer v. Richards, 3 Ariz. 227, 232, 32 Pac. 266:

"The state courts are subordinate to the Supreme Court of the United States only in cases involving federal questions, and not in those involving only local questions. The territorial courts are completely subordinate to

the United States Supreme Court. It is the court of final resort, and its decisions are binding and conclusive upon us. The Supreme Court of the territory is really but an intermediate appellate court, and this is in pursuance of the theory that the governments of territories shall always be subject to the supervision of the national authority."

Alaska is one of the territories of the United States, and its district court is the Supreme Court of the territory of Alaska. Steamer Coquitlam v. United States, 163 U. S. 346, 352, 16 Sup. Ct. 1117, 41 L. Ed. 184. Its judgments and decrees can only be reviewed by appeal or writ of error in the United States Circuit Court of Appeals for the Ninth Circuit, or by the Supreme Court of the United States. Our conclusion is that the court below erred in following the rule announced by the state courts, instead of being guided by the decisions of the Supreme Court of the United States. It is proper to add that in the rulings of the court in other respects, which are complained of, we find no reversible error.

The judgment of the District Court is reversed.