ELLIOTT & ROE V. A. J. & M. F. LONG.

No. 6629.

77 467
91 128

1. **Mortgage Upon Undesignated Part of Herd of Cattle.**—A deed of trust was executed upon forty head of beef and twenty-five head of stock cattle in a herd of about two hundred. The balance of the herd was sold, the bill of sale expressly *excepting* those under the deed of trust. *Held,* that the deed of trust was of sufficient validity to support a further identification of the individual cattle covered by the deed of trust by the original mortgagor with the beneficiaries after the sale of the residue.

ON REHEARING.

2. **Sequestration—Range Levy.**—What is known as a *range levy* is not applicable to the execution of a writ of sequestration. Under such writ the property should be taken into actual possession by the officer, so that it may be actually delivered by him when it is replevied to the party who executes such bond.

3. **Liability on Replevy Bond.**—Where there was no actual delivery by the officer of a stated number of cattle replevied, the party replevying would only be liable for such cattle as he actually acquired possession of.

4. **Description of Cattle.**—A right to forty head of beeves and twenty-five head of stock cattle would not authorize the appropriation of cattle out of either kind to make up a deficit in the number of the other.

APPEAL from Nolan. Tried below before Hon. William Kennedy.

The opinion gives a sufficient statement.

*J. F. Eidson* and *Ragland & Beall,* for appellants. —A bill of sale to a part of a stock of cattle or other personal property which fails to designate the part intended to be conveyed so that the same can be identified from the bulk or other part of the property not conveyed is void for want of certainty and conveys no title; and it is error to admit testimony in support of such instrument as to third parties. Cleveland v. Williams, 29 Texas, 204; Story on Sales, sec. 296; 2 Kent, 496; 1 Pars. on Con., 441; Brown on Sales, 44.

No brief on file for appellees.

HENRY, ASSOCIATE JUSTICE.—Appellants brought this suit to recover 55 head of cattle and caused them to be seized under a writ of sequestration. It appears that Elliott & Roe purchased under a deed of trust executed by M. C. & L. R. Taylor, the owners of the cattle, "40 head of

beef cattle and 25 head of stock cattle running on the range in Nolan and adjoining counties and branded W." Subsequently appellees purchased from F. M. Taylor "all of the W brand of cattle except 65 head secured to Elliott & Roe by deed of trust." After the date of the last named transaction it appears that the vendors of Elliott & Roe confirmed their sale to them and authorized and required that the cattle sold to them should be branded thus △, and that the trust deed to them should cover the cattle that should be so branded. Upon the verdict of a jury judgment was rendered against plaintiffs for the sum of $330. There was a controversy about whether the herd of cattle to which the 65 head sold to plaintiffs belonged contained more than 65 head when the deed of trust was made through which they derived their claim. The evidence tended to show that it contained a greater number.

The court charged the jury that if at the date of the deed of trust "there was in the stock of cattle therein mentioned more than 40 head of beef cattle, and if the 40 head mentioned in the deed of trust were not segregated or identified in some manner from the other beef cattle, said deed of trust is void as to that class of cattle; and so if at the said date there was in the said stock of cattle more than 25 head of stock cattle and the 25 head therein conveyed were not separated or identified in some manner so as to distinguish them from the other stock cattle in the brand mentioned, then said deed of trust would be void as to said stock cattle, and if you so find the plaintiffs have no title to either of these classes of cattle."

This charge was erroneous. It does not follow that because the deed of trust failed to convey any specific cattle that no rights were acquired under it. Conceding that the herd contained a greater number of each description of cattle than was conveyed, it does not follow that the contract was a nullity and conveyed no right to the vendees. As between the vendor and vendees it was proper for the contract to be subsequently executed by the selection and designation of 65 head of cattle.

The defendants, who were subsequent purchasers, not only did not purchase the 65 head, but they were expressly excepted from their purchase because they had been previously sold to Elliott & Roe. As the defendants never purchased these cattle, or any cattle except what remained of the herd after the 65 head sold to Elliott & Roe had been taken, it would seem that before any cattle sold to defendants can be treated as belonging to them, those sold to Elliott & Roe will have to be identified.

Plaintiffs did identify and mark by a distinguishing brand a number somewhat less than they were entitled to by the terms of their contract, and as their suit was for the very cattle so purchased by them and identified, they were entitled to a verdict and judgment.

The judgment must be reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 27, 1890.

ON MOTION FOR REHEARING.

*J. B. Scarborough,* for appellees, supported a motion for rehearing.

HENRY, ASSOCIATE JUSTICE.—Appellants sued to recover 58 head of cattle, described in their petition as consisting of 16 cows, 8 steers, 10 3-year and 4-year olds, 15 2-year olds, 7 yearlings, and 2 calves, all branded with the letter W and the figure $\triangle$.

The record does not contain the return of the officer showing how nor on what he levied the writ of sequestration sued out by plaintiffs, but it includes a replevy bond executed by plaintiffs for cattle described as "about 52 head delivered on the range."

Defendants by their answer claimed all of the cattle sued for but 25 head, and prayed for judgment against plaintiffs for the value of 33 head of the cattle seized under their writ.

The record contains a deed of trust by some unnamed maker, dated March 12, 1885, conveying to W. H. McCown, trustee for Elliott & Roe, "40 head of beef cattle and 25 head of stock cattle branded W." It contains a bill of sale dated March 1, 1886, from a substitute trustee under said instrument, conveying to Elliott & Roe the "40 head of beef cattle and 25 head of stock cattle branded W;" also a bill of sale dated March 10, 1886, from Elliott & Roe to M. C. & L. R. Taylor, conveying the same "25 head of stock cattle and 40 head of beef cattle;" and a deed of trust dated 20th day of March, 1886, made by M. C. & L. R. Taylor to O. J. Posey, trustee, for benefit of Elliott & Roe, conveying the same "40 head of beef cattle and 25 head of stock cattle," which instrument provides that the cattle by it conveyed, and their increase, shall be branded with a $\triangle$, and that the trust deed shall cover all of the cattle in that brand; and lastly a bill of sale dated June 17, 1887, from the trustee, in last named instrument, conveying to some unnamed person the same cattle described as being in the $\triangle$ brand.

Bradford, a witness for plaintiffs, testified that he, as agent for plaintiffs, had charge of the $\triangle$ brand of cattle, holding them by virtue of the replevy bond executed by plaintiffs. He testified that he had been able to find only 44 head of the cattle, of which 12 were calves of the year 1887 and 8 were beef steers over 4 years old.

. A. J. Long, one of the defendants, with regard to the source of the title of defendants, testified as follows: "We bought from F. M. Taylor, on October 5, 1885, all of the W brand of cattle except 65 head secured to Elliott & Roe by deed of trust," and took from him a bill of sale for them.

· Appellees, in their motion for rehearing, suggest that we misapprehended the record when we assumed in our opinion that M. C. & L. R. Taylor were the makers of the first as well as the second deed of trust for the benefit of Elliott & Roe, and they say that the first deed of trust was

made by F. M. Taylor, and not by M. C. & L. R. Taylor, and that M. C. & L. R. Taylor derived from Elliott & Roe under the deed of trust made by F. M. Taylor the title that they subsequently conveyed for the benefit of Elliott & Roe in the second deed of trust. As the record fails to show who made the first deed of trust we were unwarranted in assuming that it was made by the same persons who made the second one.

If the statement in the motion for rehearing is correct that F. M. Taylor was the source of the claims of both plaintiffs and defendants, it results that the statement in the opinion that the authority to Elliott & Roe to put the △ brand on the 65 head of cattle was given by their first vendor is incorrect; and without regard to the statements contained in the motion for rehearing, the record being silent as to the maker of the first deed of trust, it does not support the opinion in that particular.

It follows that the selection by Elliott & Roe of the cattle contracted for by them, and their designation of them by having placed upon them the △ brand, was not done by permission given to them by their first vendor subsequent to his conveyance of them, but was given by their second vendor, and subsequent to such right as defendants had acquired from the first vendor. We do not deem the distinction material.

The motion for rehearing invites our attention to a distinction between plaintiffs' right to select the number of 65 head of cattle without regard to their description, and their right to select "40 head of beef cattle and 25 head of stock cattle."

It is correctly suggested that if there is a deficiency of beef cattle they can not be allowed to make it up with stock cattle. It is not suggested or shown how many beef cattle the herd contained.

But it is contended that this suit was brought for 58 head of stock cattle, of which plaintiffs could recover no more than 25 head, and that defendants having admitted in their answer the title of plaintiffs to 25 head, were entitled to a judgment for the remaining 33 head. This view would be correct if it was sustained by the facts.

As we have shown, plaintiffs did not sue for stock cattle exclusively. The testimony shows that the term "beef cattle" includes all steer cattle over the age of three years, and that the expression "stock cattle" includes all other descriptions.

The evidence shows that plaintiffs did not replevy as many as 58 head, and that among those replevied were some that did not come within the description of stock cattle.

We do not think that what is known as a range levy is applicable to the execution of a writ of sequestration. Under that writ the property should be taken into actual custody by the officer so that it may be actually delivered by him when it is replevied to the party who executes a replevy bond. The evidence indicates that such course was not pursued.

If plaintiffs are liable to defendants at all for a moneyed judgment it

results from their having replevied cattle belonging to the defendants.    If there was no actual seizure and delivery of cattle to them they should not be required to account for a greater number than the evidence shows that they have gathered.    The evidence shows that they took possession of 44 head, including in that number 8 beeves and 12 calves.    It is not shown whether or not the calves were the offspring of their own stock. If they were, they should not be required to account to defendant for them.    If they had not previously received as many as 32 head of beef cattle they should not be required to account to defendants for the 8 beeves..

Defendants having admitted plaintiffs to be entitled to 25 head of the cattle in controversy, it is evident that if defendants were on the facts entitled to recover for any number, the finding in their favor for the value of 33 head was excessive.

The motion is overruled.

*Overruled.*

Delivered June 27, 1890.