# AVERY *v.* POPPER.

ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

No. 72.   Submitted November 7, 1900.—Decided December 3, 1900.

In an action by a chattel mortgagee of certain cattle against the purchaser of the same at a marshal's sale upon execution, the question was whether a chattel mortgage upon a portion of such cattle, which did not identify the particular animals covered by it, was good as against the purchaser of the entire lot at marshal's sale. *Held*: That this presented no Federal question.

With respect to writs of error from this court to judgments of state courts, in actions between purchasers under judicial proceedings in the Federal courts and parties making adverse claims to the property sold, the true rule is this: That the writ will lie, if the validity or construction of the judgment of the Federal court, or the regularity of the proceedings under the execution, are assailed; but if it be admitted that the judgment was valid and these proceedings were regular, that the purchaser took the

title of the defendant in the execution, and the issue relates to the title to the property as between the defendant in the execution, or the purchaser under it, and the party making the adverse claim, no Federal question is presented.

THIS was an action originally instituted in the District Court of Hunt County, Texas, by Ignatz Popper and Edward Popper, (doing business under name of I. Popper & Brother,) to recover upon a certain promissory note executed May 26, 1891, by John H. Cooke and Mary E. Cooke, his wife, to Thomas H. King, for $1940, and for the foreclosure of a chattel mortgage upon certain personal property hereinafter described, and (in their amended petition) also for a personal judgment against John M. Avery and his sureties upon certain replevin bonds.

An interest in the note to the amount of $775 was transferred by King, the payee, on April 10, 1892, to the firm of I. Popper & Brother, and the residue of such note and interest to Robert R. Neyland, under the name and style of R. R. Neyland & Company;

To secure the payment of such note John H. Cooke and wife, on May 26, 1891, executed and delivered to King a chattel mortgage upon fifty cows, with their calves of that spring, which cows were branded "Cooke" on the left side and "O K" on the left hip, the calves not being branded; also one bay mare colt, one gray horse colt and one black mule colt. This instrument was legally filed and registered as a chattel mortgage on May 30, 1891;

On June 14, 1893, the marshal of the United States levied upon, among others, the above mentioned property, by virtue of an execution issued out of the Circuit Court of the United States at Dallas on June 8, 1893, upon a judgment rendered in favor of W. W. Avery against John H. Cooke and certain sureties upon a supersedeas bond, but not against his wife, Mary E. Cooke. This judgment was rendered in pursuance of the mandate of this court in *Cooke* v. *Avery*, 147 U. S. 375. At the marshal's sale, which took place on June 28, 1893, the property was bid in by John M. Avery as attorney for and in the name of W. W. Avery, and all of such property was then and there delivered to John M. Avery;

On the following day, June 29, 1893, I. Popper & Brother brought this action in the District Court of Hunt County against John H. and Mary E. Cooke, W. W. Avery and John M. Avery, to recover of the Cookes the amount of plaintiffs' interest in the note, ($775,) and to foreclose against all the defendants their mortgage upon the property described. On the same day R. R. Neyland & Company brought a separate suit against the same parties to recover the balance due on such note after deducting the amount due Popper & Brother, and likewise to foreclose the mortgage. These suits were consolidated January 16, 1894. The property was seized while in the possession of John M. Avery by virtue of writs of sequestration issued in these actions. After such seizure, John M. Avery replevied and resumed possession of the property, drove it out of Hunt County, and within a short time thereafter sold and disposed of it.

At the time the mortgage was executed to secure the note, there were many more animals of the same description mingled with those upon which the mortgage was given; but the state court found the evidence sufficient to show that, just prior to the execution of the mortgage, the animals embraced in it were pointed out to Mr. Neyland, who represented King in taking the mortgage security and drafting the mortgage. But the animals covered by the mortgage were not separated from the others of the same description with which they were mingled, nor was there any such separation when the execution in favor of Neyland was levied upon the property in controversy. The court further found that the fifty head of cows described in the mortgage, as well as all others of like description mingled with them, were the separate property of Mary E. Cooke at the time the mortgage was executed, and continued to be her separate property until disposed of by Avery; that the fifty calves were born during the marriage of Cooke and wife, after the cows became the separate property of Mrs. Cooke, and were, therefore, at the time the mortgage was given and the execution in favor of Avery levied, the community property of John H. and Mary E. Cooke. Also, that the horses and mule involved in this suit were the offspring of the separate property of Mary

E. Cooke during her marriage with John H. Cooke, and were likewise the community property of Cooke and his wife at the time the mortgage was given and the execution levied.

The case appears to have been first tried in 1894, and judgment rendered against the plaintiffs in error; but on appeal by them the mortgage was held to be invalid, the judgment reversed, and the case remanded by the Court of Civil Appeals for a new trial. *Avery* v. *Popper*, 34 S. W. Rep. 325. The case was again tried in October, 1897, and resulted in a judgment in favor of Popper & Brother against John H. Cooke in the sum of $1637 and in favor of Neyland, whose suit was consolidated with the other, in the sum of $1974. The mortgage was foreclosed on the fifty cows, one mare, one horse and one mule, and a further judgment rendered against John M. Avery and the sureties upon his replevin bond in the sum of $850, the value of the property disposed of by him. The court further found that as to the fifty calves the mortgage was invalid, and a foreclosure of the mortgage to that extent was denied.

The case was again carried to the Court of Civil Appeals by John M. Avery and his sureties, which affirmed the judgment against Cooke and wife, but increased the judgment against John M. Avery and his sureties in the sum of $534, the value of seventeen two-year old steers and thirty-two two-year old heifers. 45 S. W. Rep. 951. The court found the District Court to have been in error in holding that the mortgage executed by the husband and wife was not a lien upon all the property embraced in it, whether separate or community. On appeal to the Supreme Court the judgments of the Court of Civil Appeals and of the District Court were reversed, and a judgment ordered in favor of Popper & Brother and Neyland against the plaintiff-in error, John M. Avery, and his sureties in the sum of $850, interest and costs. 92 Texas, 337. The court found that "no right attached under the mortgage to specific animals, nor did it give a lien upon an undivided interest in the herd. The power was given to sell certain cows and their calves, which could only be done by selecting them from the herd, and it being necessary to the execution of the express authority to sell, the law will imply the authority to take the

fifty cows and calves from the larger number. *Oxsheer* v. *Watt*, 91 Texas, .124. The chattel mortgage was valid between the parties to it." " Upon default in payment, King or the holders of the note, had the right to select from John H. and Mary E. Cooke's stock of cattle and sell fifty cows and calves corresponding to the description in the mortgage. If the right had been exercised while the calves of the spring of 1891 were following their mothers, the selection of the cow would have identified the calf. But having failed to exercise the right until in the course of nature the dam and the young would separate, it has become impossible to identify the calves, and all claim upon them has failed before Avery converted the stock."

Whereupon Avery and his sureties sued out a writ of error from this court.

*Mr. John M. Avery* for plaintiffs in error.

*Mr. Benjamin F. Looney* for defendants in error.

Mr. Justice Brown, after stating the case as above, delivered the opinion of the court.

The plaintiffs in error invoke the jurisdiction of this court upon the ground stated in the third clause of Rev. Stat. section 709 of a "title, right, privilege or immunity claimed· under . . .. an authority exercised under, the United States, and the decision is against the title, right, privilege or immunity specially set up or claimed." The special right claimed was a right as purchaser under the marshal's sale upon execution to a priority of payment from the goods sold as against the chattel mortgage. The claim set up in the second assignment of error was that the mortgage was invalid as against such execution for the reason that there were many more animals of the same description mingled with those upon which the mortgage was given, and that the animals covered by the mortgage were not separated from the others of the same description with which they were mingled, nor was there such separation up to the time said execution from the United States court was levied

upon the property in controversy ; that no lien attached to any
particular animals in the herd, nor did the mortgage give a lien
upon an undivided interest in the herd, and as a matter of law
was invalid as against the execution ; and that in giving priority
to the mortgage the Supreme Court of Texas failed to give full
force and effect to the judgment of the Circuit Court of the
United States.

It should be borne in mind that this action was not begun
until the day after the termination of the action in the Federal
court by a sale of the property to Avery, the payment of the
money, and apparently the return of the execution satisfied;
and that the question litigated was not the legality of this par-
ticular judgment, which was admitted to be valid, but the
general question whether, under the laws of Texas, an execu-
tion is valid as against a mortgage upon animals which are not
identified, and not separated from others of the same descrip-
tion with which they were mingled.    Briefly stated, the question
is whether the mere fact that the plaintiff in error was a pur-
chaser at a marshal's sale of the property, entitles him to bring
into this court questions under the state law with respect to
the validity and priority of a chattel mortgage covering the
same property or a part thereof.

There are many authorities upon the general question of the
rights of purchasers at marshals' sales as against lienholders
under laws of the several States, from which the true rule may
be deduced.    The question is analogous to the one decided at
the last term of this court in *Blackburn* v. *Portland Gold.
Mining Co.*, 175 U. S. 571, and *De Lamar's Nevada Gold
Mining Co.* v. *Nesbitt*, 177 U. S. 523, to the effect that the
mere fact that parties claim adversely to each other under the
mining laws or under patents of the United States does not en-
title them to a writ of error from this court, unless there be a
question made as to the meaning and construction of a Federal
statute, or of an authority exercised under the United States.

Of the cases bearing more directly upon the question here
involved of the relations of a purchaser under a marshal's sale
to others claiming the same property, the earliest is that of
*Collier* v. *Stanbrough*, 6 How. 14.    Collier was the purchaser

under a marshal's sale upon execution against one David Stanbrough of certain personal property which was claimed by Josiah Stanbrough, the defendant, who insisted that the property was not legally seized or levied upon, and that it was not legally appraised or advertised as required by law. Jurisdiction under the writ of error to the Supreme Court of Louisiana was sustained upon the obvious ground that the sale by the marshal was directly attacked, and the invalidity of plaintiff's title set up as a defence.

In *Erwin* v. *Lowry*, 7 How. 172, Erwin was the purchaser at a marshal's sale of certain land and negroes, and was sued by Lowry, who claimed as curator of the estate to which the property belonged. The question was the same as that in *Collier* v. *Stanbrough*, namely, whether the marshal's deed to Erwin was void for the reason that it was not supported by a lawful judgment, or for want of compliance with any legal requirement in conducting the seizure and sale. The jurisdiction was also sustained in this case.

In *Clements* v. *Berry*, 11 How. 398, the suit was by Daniel Berry against the marshal directly, in replevin, to recover property levied upon as the property of Charles F. Berry, and the sale was stopped by a writ of replevin issued from the state court. As the marshal was a party defendant to the suit, and his right to sell the property was directly attacked, the jurisdiction was sustained. For the same reason that the marshal was made a defendant to the suit in the state court, and justified under process from the Federal court, jurisdiction was sustained in *Freeman* v. *Howe*, 24 How. 450; *Buck* v. *Colbath*, 3 Wall. 334; *Etheridge* v. *Sperry*, 139 U. S. 266, and *Bock* v. *Perkins*, 139 U. S. 628.

In *Day* v. *Gallup*, 2 Wall. 97, the suit was by Gallup against Derby and Day, execution creditors, Allis, their attorney, and Gear, marshal of the United States, who justified under a judgment of the Federal court against one Griggs. The suit was discontinued as to the marshal before trial. The case turned on the ownership of the goods seized, and judgment went against Derby and Day, which was affirmed by the Supreme Court of Minnesota. The suit was not begun until after the execution

from the Federal court had been returned and the action completely terminated. Upon writ of error from this. court it was held that at the time Gallup brought his action there was no case pending in the Federal court respecting the goods which had been attached under· process from that court; that it did not appear that the authority of Gear as marshal to take the goods was drawn in question, and that from the return of the execution satisfied the Federal court had no control over the parties. The case between the plaintiffs in error against Griggs, the original defendant in the Federal court, had been decided, the money made on the execution and the debt paid. In commenting' on that case in *Buck* v. *Colbath*, p. 342, it was said : " It is only while the property is in possession of the court, either actually or constructively, that the court is bound or professes to protect that possession from the process of other courts. Whenever the litigation is ended, or the possession of the officer or court is discharged, other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not."

We do not undertake to say that the mere fact the action in the Federal court is no longer pending would oust the jurisdiction of this court to reëxamine the action of the state court, if the validity of the judgment of the Federal court, or the proceedings by the marshal under that judgment were directly attacked; but in *Day* v. *Gallup*, it appeared that not only had the proceedings in the Federal court terminated, but that the real question was the ownership of the goods as between the attaching creditors and Gallup. Gallup claimed under a sale of the. goods which the attaching creditors insisted· was a fraud.

In *Dupasseur* v. *Rochereau*, 21 Wall. 130, Rochereau, a judgment creditor of one Sauvé, brought an action in the state court against Dupasseur, alleging that he had taken possession of a plantation belonging to Sauvé upon which he, Rochereau, held a mortgage, and charging that the plantation was bound for the debt, and that Dupasseur was bound either to pay the debt or give up the plantation. Dupasseur defended upon the ground that he had bought the property at a marshal's sale, upon an execution in his own favor against Sauvé, "free of all mort-

gages and incumbrances, and especially from the alleged mortgage of the plaintiff," Rochereau. Upon writ of error from this court it was held that, as the question at issue was the effect to be given to the judgment of the Federal court and to the proceedings under the execution in that court, and to the sale by the marshal free of all mortgages and incumbrances, jurisdiction should be sustained. Here the validity of the sale by the marshal was directly attacked. Notwithstanding the fact that Dupasseur purchased the property under the execution sale on May 5, 1876, and Rochereau did not begin his action until June 7, 1866, the jurisdiction was sustained, because Dupasseur's title under that purchase was attacked by the other party.

In *McKenna* v. *Simpson*, 129 U. S. 506, an assignee in bankruptcy resorted to a state court to set aside a conveyance by the bankrupt as in fraud of creditors; but as no question was raised there as to the power of the assignee under the acts of Congress, or as to the rights vested in him as assignee, but only as to what should be deemed a fraudulent conveyance and as to the application of the evidence in reaching that decision, we held that the case presented no Federal question, and the writ of error was dismissed.

*Per contra*, in *O'Brien* v. *Weld*, 92 U. S. 81, the question arose whether, under the bankrupt law, the District Court had authority to make a certain order, and as the decision of the state court was against such authority, jurisdiction was sustained. Such was also the case in *Factors' & Traders' Insurance Co.* v. *Murphy*, 111 U. S. 738, where the effect to be given to a sale of property under an order of a District Court was in question, the authority of the court to direct a sale free from incumbrances being denied.

In *Stanley* v. *Schwalby*, 162 U. S. 255, the action in the state court was directly against officers of the United States, and ultimately against the Government itself. Jurisdiction was sustained upon that ground.

Finally, in *Pittsburg, Cincinnati &c. Railroad* v. *Long Island Loan & Trust Co.*, 172 U. S. 493, the question arose whether.

due effect was accorded to certain foreclosure proceedings in Circuit Courts of the United States, under which plaintiff in error claimed title to the land and property in question. Under these proceedings a sale of railroad property had been made, subject to certain outstanding bonds prior in lien to the mortgage and to all other, if any, paramount liens thereon, and that the decree should not in any manner prejudice or preclude the holders of such paramount liens. Plaintiff in error contended that the state court did not give due effect to these decrees of the Circuit Courts of the United States, in that it did not recognize as paramount the rights acquired under those decrees by the purchasers of the property in question; but postponed or subordinated these rights to a lien upon such property, which, it was alleged, was created or attempted to be created while those suits were pending, and while the property was in the actual custody of those courts, by receivers, for the purposes of being administered. As the question concerned the effect to be given to a sale under process from the Federal courts, and to the construction of the decree of those courts, jurisdiction was sustained.

With respect to writs of error from this court to judgments of state courts in actions between purchasers under judicial proceedings in the Federal courts and parties making adverse claims to the property sold, the true rule to be deduced from these authorities is this: That the writ will lie, if the validity or construction of the judgment of the Federal court, or the regularity of the proceedings under the execution, are assailed; but if it be admitted that the judgment was valid, and these proceedings were regular, that the purchaser took the title of the defendant in the execution, and the issue relates to the title to the property, as between the defendant in the execution or the purchaser under it, and the party making the adverse claim, no Federal question is presented—in other words, it must appear that the decision was made against a right claimed under Federal *authority*, in the language of Rev. Stat. § 709.

Applying this test to the case under consideration, it is evident from the record that no question was made as to the valid-

ity of the judgment, or the regularity of the proceedings in the Federal court; and that the case turned upon the question whether, under the laws of Texas, a chattel mortgage upon property sold under execution is good which does not identify the particular property covered by it, but leaves such property to be subsequently identified by selection of the mortgagor. In regard to this, the Supreme Court of that State held (92 Texas, 337) that the chattel mortgage upon the fifty cows with their calves, out of a designated herd of one hundred, with power to the mortgagee to sell on default, gave him the right to select such cows from the larger number; and that such mortgage, implying, as it did, a power of selection on the part of the mortgagee, was, when duly registered, notice of his rights to the purchaser of the mortgagor's interest—following in these particulars *Oxsheer* v. *Watt*, 91 Texas, 124. That this was no new doctrine in the State of Texas is also evident from the case of *Elliott* v. *Long*, 77 Texas, 467, decided in 1890, three years before the property was sold upon execution in this case. See also *Wofford* v. *McKenna*, 23 Texas, 36, 46. We are referred to two cases which apparently conflict with these, *Cleveland* v. *Williams*, 29 Texas, 204, 212, and *Moss* v. *Sanger*, 12 S. W. Rep. 616, but if any such conflict existed, it was for the Supreme Court to settle it, as it seems to have done in *Elliott* v. *Long*, by overruling the former cases. Whether the right of selection recognized as between mortgagor and mortgagee is also applicable as between a purchaser upon execution and the mortgagee, is not a Federal question, if no discrimination be made against executions from Federal courts.

This was a question either of local law or of general law. If of local law, of course the decision of the Supreme Court of Texas is binding upon us. If of general law, as it involves no Federal element, it is equally binding in this proceeding, since only Federal rights are capable of being raised upon writs of error to state courts. Conceding that, if the question had arisen on appeal from a Circuit Court of the United States, we might have come to a different conclusion, it by no means follows that we can do so upon a writ of error to a state court, whose opinion upon a question of general law is not reviewable here.

Other questions are raised in the assignments of error, but they bear even more remotely upon a Federal right. The decision already made covers them.

The writ of error must therefore be

*Dismissed.*