FARMERS' & MERCHANTS' NAT. BANK et al. v. JONES et al.    (No. 2782.)

(Court of Civil Appeals of Texas. Texarkana. June 14, 1923.)

1. Chattel mortgages ⊜⟹49(1)—Defective descriptions of mortgaged cattle held not to prevent foreclosure, where mortgagees' acts are sufficient to identify them.

Where a dairyman gave mortgages with power of sale to two different parts of his herd to different mortgagees, in one describing cattle as "situated in T. county, Texas" and in the other as so many head at a place not definitely located, so many at another, etc., the number at any place being greater than the number named, and the makeup of whole herd being subject to changes, that the mortgagees exercised their power of selection, inducing the receiver, appointed to manage the cattle, to brand and set aside certain cows to each of them, that these cows were sold separately under court order and the proceeds kept in a special separate account, justifies reversal of a decree denying foreclosure for the indefinite descriptions.

2. Receivers ⊜⟹145—Claimant held entitled to proceeds of receiver's sale of his cows previously selected, free from priorities and claims.

Where a dairyman delivered certain cattle to deceased, another dairyman, under an agreement to sell them as agent, and the day following that in which a receiver appointed by the court took possession of all the agents' cattle, he selected and pointed out 24 head as his, held that, after sale of the property by a receiver under a court order, the dairyman is entitled to the proceeds from his cows, free from priorities and as against deceased's creditors and administrator.

3. Chattel mortgages ⊜⟹290—In foreclosure suit, attorney's fees are not payable to administrator of mortgagor from proceeds of receiver's sale of secured assets.

In a suit to foreclose a chattel mortgage on cattle, during which a receiver was appointed to manage the cattle, where the mortgagor died during the trial the district court erred in ordering the receiver to pay over part of the proceeds of the foreclosure sale to the mortgagor's administrator as attorney fees to be paid to an attorney in the suit, for only the proceeds of the sale of the other cattle above the mortgaged

ones constituted general assets properly applied to such payment.

4. Abatement and revival ⊜⟹58(2)—Mortgage foreclosure suits not abated by death of defendant before verdict under revival statute.

Under Rev. St. art. 1888, providing procedure to continue suits where defendant dies before verdict, a suit to foreclose a chattel mortgage and collect notes, and a cross-suit to recover the proceeds of a receiver's sale of pledged cattle, commenced by filing suit prior to defendant's death, were not abated thereby; the court having full jurisdiction over the subject-matter and property to the extent of the mortgage claims, and to decree foreclosure of the mortgages, liens, etc., on the proceeds of the sale of the mortgaged cattle in the receiver's hands, and application of such specific proceeds on judgment indebtedness.

5. Abatement and revival ⊜⟹77—Foreclosure decrees against administrator performed by probate court.

Under Rev. St. art. 2004, requiring judgments against executors, etc., to state that it shall be paid in due course of administration and executions to be certified to the county court sitting in probate matters, a suit to foreclose chattel mortgages and for other relief, being commenced before defendant's death and continued after it against the administrator, under article 1888, the decree should be performed exclusively by the probate court.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by the Farmers' & Merchants' National Bank and others against Frank Jones and another, in which E. E. Edwards and others intervened. From a judgment refusing to foreclose their respective chattel mortgages, the named plaintiff and the named intervener appeal. Modified.

On October 19, 1920, the Farmers' & Merchants' National Bank sued Frank Jones on certain promissory notes and to foreclose a chattel mortgage on certain cattle given to secure the notes. On application therefor the court, on October 19, 1920, appointed a receiver to take possession and control of the cattle. On December 1, 1920, Frank Jones died, and an administrator of his estate was duly appointed by the probate court. The Farmers' & Merchants' National Bank amended its original petition and made the administrator, as well as Wade Hampton, a party defendant. As to Wade Hampton, the amended petition, in an alternative plea, sought to make him jointly and severally liable for the notes sued on, as a silent partner of Frank Jones, if he should be found to be such copartner. Both the Exchange State Bank and E. E. Edwards intervened in the suit and prayed for judgment on their notes and for a foreclosure of chattel mortgages on certain cattle. Some ten other unsecured creditors later intervened in the suit and

prayed judgment on their claims. The administrator answered by general denial, and specially pleaded the want of the jurisdiction in the district court to order sale of the mortgaged property and the invalidity of the several chattel mortgages for want of proper description of the cattle. The defendant Wade Hampton filed a general denial and a cross-action, setting up claim and ownership to 24 head of cattle in the hands of the receiver, and prayed for judgment for them.

On December 22, 1920, the court ordered the receiver, for good reasons stated, to sell all the cattle and to keep the proceeds of the sale of the cattle—

"separate from other funds (held) by said receiver until the rights and liens of the alleged lien creditors have been fully adjudicated by this court."

The order further directed that—

"The receiver shall, before making the sale of said milk cows, make a correct and accurate description of each of them, together with the price of each of them, received by him at such sale, which description shall be reduced to writing and filed as a filed paper in this court."

The case was submitted to the jury on special issues, in effect asking the jury to ascertain and determine from the evidence whether or not Frank Jones and Wade Hampton were copartners, and whether or not all the notes sued on were the sole liability of Frank Jones. The jury answered that Wade Hampton was not a partner, and that all the indebtedness sued on was that solely of Frank Jones.

The court entered a judgment as follows: (1) In favor of the Farmers' & Merchants' National Bank for the amount of the principal, interest, and attorney's fees due on the notes sued on, and refusing to establish and foreclose its alleged chattel mortgage on the 60 cattle; (2) in favor of the defendant Wade Hampton that the plaintiffs take nothing as against him and that he recover the sum of $800, being the value of the 24 head of cattle claimed by him and taken into possession by the receiver and sold; (3) in favor of the Exchange State Bank for the amount of its notes, principal, interest, and attorney's fees, together with a foreclosure of its chattel mortgage lien on four head of cattle, or the proceeds thereof, which had been sold by the receiver; (4) in favor of E. E. Edwards in the amount of the principal, interest, and attorney's fees due on the notes sued on, and refusing to establish and foreclose his alleged chattel mortgage on the 15 cattle; (5) dismissing the interventions of the ten other creditors upon the ground that their claims were such as should be adjudicated and allowed by the probate court; (6) refusing to require the receiver to replace a certain sum of money paid by him out of the proceeds of the sale of the cattle on the order of the probate court of Tarrant county; and (7) providing that the judgment shall be certified to the probate court of Tarrant county for observance after the receiver has paid the sum of $800 to the defendant Wade Hampton.

It appears that on October 17, 1920, Frank Jones sustained a very serious bodily injury from which he lingered in a semiconscious condition until he died on December 1, 1920. He was a dairyman, and possessed 100 milk cows and 50 other cattle. At the time of his injury he was indebted to a certain list of creditors, to three of whom he had given a chattel mortgage on his cattle to secure the notes due them, namely, the Farmers' & Merchants' National Bank, the Exchange State Bank, and E. E. Edwards.

During the greater portion of the year 1920, and for several years prior thereto, Frank Jones bought and sold dairy stock in addition to conducting his dairy business. It was his practice to sell such dairy stock to individuals in small numbers. As a consequence of this practice the individual cattle of his herd were constantly changing. For several years prior to his death, Mr. Jones borrowed money from the Exchange State Bank and the Farmers' & Merchants' National Bank, and frequently borrowed money from each of them. His loans were secured by chattel mortgages on his dairy cattle, and his practice of buying and selling cattle was well known to the banks and the officers thereof. Mr. Jones had in his possession, under lease, three tracts of land, known respectively as the home place, about 4 miles south of Fort Worth; the Ellis place, south of Fort Worth; and the old Shankle place, 20 miles north of Fort Worth; and had dairy stock on each tract. On October 22, 1919, Frank Jones executed and delivered to the Exchange State Bank the notes in suit, and at the same time executed a chattel mortgage on "40 head of dairy cows, all branded J on the left or right hip" (but only four of which were on hand at the death of Jones). This mortgage was duly registered on October 20, 1919. On June 29, 1920, and on August 19, 1920, Frank Jones executed to the Farmers' & Merchants' National Bank the notes sued on and executed a chattel mortgage on "40 head of Jersey milk cows, now located at my home 4 miles south of Fort Worth, Tex.; 20 Jersey milk cows located on the old Shankle place, 20 miles north of Fort Worth, Tex." There were more than 40 Jersey cows on the home place, and more than 20 Jersey cows on the old Shankle place, at the time of the mortgage, and at the time the receiver took possession of all the cattle. The mortgage was duly registered on August 19, 1920, and, among other things, contained the following provision:

"If this note is not paid at maturity, or when all or part of said property is moved from where it is now located, or when it is legally seized, then or at any other time thereafter the holder is hereby fully authorized to seize and take into his possession all of the above-described property, or any part thereof, wherever the same may be found (hereby binding myself to surrender up the same), and to sell, convey, and deliver the property, or cause the same to be done, at either public or private sale, with or without notice, at such place and on such terms as he may deem best."

On August 5, 1920, Frank Jones executed to E. E. Edwards the note sued on, and executed a chattel mortgage on "15 Jersey milk cows" and certain other items of personal property which are not involved in this suit. There was no other description of the cows contained in the mortgage except that they were "situated in Tarrant county, Tex." This mortgage was duly registered on the 21st day of October, 1920, and contained the following provision, among others:

"But in case of default in the payment of said indebtedness, the trustee is then, or any time thereafter, authorized and empowered, at the instance of the holder of the indebtedness secured hereby, to seize and sell said property at public or private sale for cash at such place as the trustee shall elect."

The evidence further shows that Wade Hampton owned a herd of dairy cattle located at his home near Crowley, Tex., and that he entered into an agreement with Frank Jones in his lifetime and before his injury to the effect that he should deliver to Frank Jones at his home place certain cattle for sale by Jones as his agent. During the spring and summer of 1920 Wade Hampton delivered to Mr. Jones under this agreement about 40 head of cattle, and about 24 of these were found at the home place at the time the receiver took charge. It appears that after the injury of Frank Jones, and shortly before the institution of the suit by the Farmers' & Merchants' National Bank, all of the cattle belonging to Frank Jones located on the old Shankle place north of Fort Worth, and the Ellis place, were moved to the home place, where the main dairy herd were kept. There were 149 head of cattle collected together at the home place at the time the receiver took possession of the property of Frank Jones. The next day after the receiver took possession Wade Hampton selected and pointed out 24 head of cattle as belonging to him. Thereafter on October 23, 1920, Mr. Hunter, agent of the Farmers' & Merchants' National Bank, and Mr. E. E. Edwards went to the home place, and, with the assistance of the receiver, selected and designated cattle to the number called for in their respective mortgages; the bank selecting and designating 60 head, and E. E. Edwards 15 head of the cattle. The 60 head selected by the agent of the Farmers' & Merchants' National Bank were by the receiver branded at the time with a running bar on the right hip, so as to identify them thereafter. The 15 head of Jersey cows selected and designated by Mr. E. E. Edwards were branded with a running bar on the left hip. The receiver further made a description in writing of the cattle so selected and designated by these parties according to flesh marks and ear marks. There were 4 dairy cows in the possession of the receiver at the time, with the brand J on the hip. Subsequently on the 22d day of December, 1920, the receiver, acting under orders of the court, sold all of the cattle which had been selected and designated by the Farmers' & Merchants' National Bank, E. E. Edwards, Wade Hampton, and the 4 head claimed by the Exchange State Bank, as well as the remaining cattle. The cattle designated by the Farmers' & Merchants' National Bank were sold for the total sum of $2,920, and those designated by E. E. Edwards for the total sum of $900, and the proceeds of such sale were deposited in a bank by the receiver in his name, designating the deposit as "Ralph D. Martin, Receiver, account No. 2." The proceeds of the sale of all the other cattle were deposited in the bank in the receiver's name, in an account called "special account No. 1." The cattle in this last group brought $33.84 a head, and included the 24 head belonging to Wade Hampton, as well as the 4 head of cattle coming under the mortgage of the Exchange State Bank. It further appears that the probate court ordered the sum of $450 paid by the administrator to the attorneys of the administrator, and that the receiver paid same to the administrator out of the proceeds of the sale of the cattle from "account No. 2." The Farmers' & Merchants' National Bank and E. E. Edwards appeal.

Smith, Blow & Culver and Wm. F. Young, all of Fort Worth, for appellants.

Estes & Ammerman, Phillips, Trammell & Caldwell, Burns, Christian, Gumm & Gordon, Power, Dryden & Rawlings, McLean, Scott & McLean, F. B. Walker, Sam R. Sayers, Capps, Cantey, Hanger & Short, and N. A. Dodge, all of Fort Worth, for appellees.

LEVY, J. (after stating the facts as above) [1] Both the Farmers' & Merchants' National Bank and E. E. Edwards predicate error upon the ruling of the court denying to them and refusing to foreclose their chattel mortgage liens. There is no question of priority of liens, or of subsequent purchasers or mortgagees of the cattle involved in this case. Under the facts and circumstances shown the chattel mortgages were not so legally ineffective of identification as to be void, and the power of selection existed on the part of the mortgagees. Avery v. Poffer et al., 92 Tex.

337, 48 S. W. 572, 49 S. W. 219, 50 S. W. 122, 71 Am. St. Rep. 849; Id. 179 U. S. 305, 21 Sup. Ct. 94, 45 L. Ed. 203; Oxsheer v. Watt, 91 Tex. 124, 41 S. W. 466, 66 Am. St. Rep. 863; Elliott v. Long, 77 Tex. 467, 14 S. W. 145; Pitluk & Meyer v. Butler (Tex. Civ. App.) 156 S. W. 1136; Houston Bank v. Gregg Co. (Tex. Civ. App.) 202 S. W. 805. The cattle were specially marked and sold under order of the court separately, and the proceeds of said sale received and deposited specially in "account No. 2;" and therefore appellants have the right to subject all the proceeds to their liens.

[2] There was no error in decreeing appellee Hampton the $800 as the value of his cattle. According to the evidence and findings the appellee Hampton was not a partner of Frank Jones, and was the owner of the cattle claimed by him as his own, and which were taken by the receiver into his possession and sold under the order of the court. Hence the appellee Hampton would be entitled to the proceeds of the sale of his cattle, and no other party would be entitled to priority over him in the proceeds of such sale. The proceeds of the sale of appellee Hampton's private cattle could not legally be applied on the debts of the Frank Jones estate or turned over to the administrator.

[3] The order of the district court was erroneous, and is set aside, which directed the receiver to pay over to the administrator the $450 attorney's fees out of the proceeds of the sale of the mortgaged cattle. The proceeds of the sale of the other cattle, above the mortgaged cattle and the cattle owned by appellee Hampton, would be the general and unsecured assets and funds of the estate of Frank Jones, out of which the court should have ordered the receiver to pay to the administrator the said sum of money. The administrator was entitled to receive possession of such sum of money from the receiver out of such general and unpledged assets, and the receiver is entitled to be credited out of that fund on hand with the said sum of $450 so paid out to the administrator.

Error is further predicated upon the judgment as entered, in providing that it be certified to the probate court for observance. The proposition is that it was erroneous for the court to order that the judgment be certified to the probate court for observance, because the district court, having acquired jurisdiction before the death of Frank Jones, had full power and authority, notwithstanding the death of Frank Jones and the appointment of an administrator, to enforce and perform the judgment in their favor. The Farmers' & Merchants' National Bank, E. E. Edwards, the Exchange State Bank, and Wade Hampton filed their pleadings during the lifetime of Frank Jones. All the other parties, except those above named, filed their interventions after the appointment of the administrator, and were not pertinent to the suit already filed by appellants. The Farmers' & Merchants' National Bank, having a debt against Frank Jones secured by a chattel mortgage on cattle, first brought the suit and applied for appointment of a receiver. On the filing of the suit the court had the right, on the application made, to appoint a receiver to take possession and control of the mortgaged property. Article 2128, R. S.

[4, 5] The filing of the suit was the commencement of the action, and by the terms of the statute it did not abate by the death of the defendant Frank Jones. Article 1888, R. S. Having full jurisdiction over the subject-matter and the property to the extent of the claims under mortgage of the Farmers' & Merchants' National Bank, E. E. Edwards, and the Exchange State Bank, and the claim of ownership by Wade Hampton, the district court could, under the terms of article 1888, legally proceed to judgment such as would be authorized by law. The death of Frank Jones and the appointment of an administrator did not terminate the power of the district court to render, in this case, a judgment as follows: On the notes, foreclosing the chattel mortgages, decreeing a lien on the proceeds of the sale of the mortgaged cattle in the hands of the receiver, and applying such specific proceeds on the judgment indebtedness. But after such determination in the district court, the judgment, in virtue of the statute, should be performed exclusively through the probate court. Article 2004, R. S.; Lauraine v. Ashe, 109 Tex. 69, 191 S. W. 563, 196 S. W. 501. The case of Lauraine v. Masterson (Tex. Civ. App.) 193 S. W. 708, has application to a different situation from the instant case. In the instant case Frank Jones alone owed the debt and owned the mortgaged property. In the Masterson Case, supra, the debt was jointly owed and the mortgage was upon property owned in common by A. C. Allen and Mrs. Margaret Allen. The court there held, and correctly so, that the district court had the power and should perform the judgment by proceeding to make the sale of the mortgaged property, because "the powers of the probate court were inadequate to grant plaintiff full relief." In other words, that the statute did not apply to that case. As said by the court:

The "defendant in error is entitled to have the whole of the property sold to pay the entire indebtedness, and this right often is, and may be in this case, of great importance. The probate court is without power to make a sale of the whole of the property, and defendant in error cannot be required to divide his claim and security and have one portion of the judgment enforced by a sale made by the probate court and the other by sale directed by the district court."

It is concluded that the judgment should be so modified as to allow and foreclose the

chattel mortgages of the appellants, and to decree a lien upon the specific proceeds of the sale of the mortgaged cattle in the hands of the receiver in the amount of $2,920 in favor of the Farmers' & Merchants' National Bank and of $900 in favor of E. E. Edwards, and that said amounts of the proceeds shall be applied on the respective judgment indebtedness due them, and to order the receiver to turn over to the administrator all the moneys and proceeds arising from the sale of all the mortgaged cattle, as well as the cattle that were not mortgaged, after paying Wade Hampton the sum of $800 as the value of his cattle, and to direct that the judgment shall be certified to the probate court of Tarrant county, Tex., to be there enforced and performed as directed and in accordance with law.

As modified, the judgment will be in all things affirmed; the costs of appeal are to be taxed against the administrator, payable in the due course of administration.

