# CORTELYOU *v.* HOUGHTON.

APPEALS; INJUNCTION; UNDERTAKINGS; MEASURE OF DAMAGES; POSTMASTER GENERAL.

1. Although it is a general rule that an appellate court will refuse to disturb the ruling of the trial court that a party who has given an undertaking is not liable thereon, because of the knowledge of the

facts possessed by the trial court, yet such rule does not apply where the facts appear in the pleadings and the questions at issue have come before the appellate court on appeal upon the merits.

2. An undertaking given by a complainant as a condition precedent to the granting of a temporary injunction is not dissolved by the issuance of a decree granting a permanent injunction, where such decree is appealed from and a supersedeas bond on appeal given; and when such decree is reversed the complainant remains liable upon the undertaking. (Following *Dodge* v. *Cohen*, 14 App. D. C. 582, 597.)

3. Where a bill is filed against the Postmaster General to restrain him from enforcing a higher rate of postage than has hitherto been paid by the complainant, and an undertaking is given by the complainant as a condition precedent to the granting of a temporary injunction, upon the dismissal of the bill the measure of damages on the undertaking is the difference between the two rates of postage, and this sum may be collected by the Postmaster General in his representative capacity, to be accounted for by him to the United States.

No. 1607.   Submitted February 14, 1906.   Decided March 7, 1906.

HEARING on an appeal by the defendant from so much of a decree of the Supreme Court of the District of Columbia as denied a motion for a reference to ascertain damages.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal is taken to review so much of a decree entered herein as denies appellant's motion for a reference to ascertain the damages suffered by appellant, the Postmaster General, through the suing out of the injunction granted herein.

A brief history of the case is required for the proper understanding of the question presented by the appeal.

The appellees, Henry O. Houghton, trustee, and others, on May 31, 1902, filed their bill of complaint against Henry C. Payne, deceased, then Postmaster General, asking that Mr. Payne, referred to in the complaint as holding the office of Postmaster General, be enjoined from canceling the certificate of entry permitting certain publications of complainants to be transmitted at second-class rates, and requiring him to receive

said publications and transmit them through the mail as mailable matter of the second class. Upon the same day the court below ordered that, upon complainants filing the undertaking required by equity rule 42, the defendant be restrained as prayed, "until further order, to be made, if at all, after a hearing which is fixed for the 16th day of June, at 10 o'clock, A. M., 1902."

The injunction undertaking was filed the same day, and is as follows:

"George H. Mifflin, one of the complainants, and the American Surety Company, of New York, surety, hereby undertake to make good to the defendant all damages by him suffered or sustained by reason of wrongfully and inequitably suing out the injunction in the above-entitled cause, and stipulate that the damages may be ascertained in such manner as the justice shall direct, and that, on dissolving the injunction, he may give judgment thereon against the principal and surety for said damages in the decree itself dissolving the injunction."

No hearing was had on June 16, 1902, and no further order was made until on March 10, 1903, when the case was heard on bill and answer, and the injunction was made perpetual. From such decree an appeal was taken to this court, which, on June 5, 1903, reversed the decree. 22 App. D. C. 234. An appeal was thereupon taken to the Supreme Court of the United States, the injunction being continued pending the appeal. On April 11, 1904, the decree of this court was affirmed by the Supreme Court. 194 U. S. 88, 48 L. ed. 888, 24 Sup. Ct. Rep. 590.

George B. Cortelyou, who was on March 27, 1905, and still is, Postmaster General, was on that day duly substituted as defendant. Two days thereafter the motion for the decree above referred to was filed.

A decree was granted July 7, 1905, and is as follows:

"This cause came on to be further considered upon the motion to enter a decree upon the mandate of the court of appeals, filed herein on June 6, 1904 (which is here produced to the court), and for a reference to ascertain the damages suffered by the defendant by reason of the wrongful suing out of the injunction

herein, and was argued by counsel; whereupon it is, this 7th day of July, 1905, by the court, adjudged, ordered, and decreed that the decree hereinbefore entered on March 10, 1903, be, and the same, in obedience to said mandate, is, hereby reversed and set aside; that the bill of the aforesaid complainants be, and the same is, hereby dismissed, with costs adjudged in the Supreme Court of the United States, the court of appeals, and in this court; and that the injunction heretofore granted be, and the same is hereby dissolved.

"And the court, upon consideration of the bill and answer, and stipulation herein, is of the opinion that the complainants and the surety on the injunction undertaking given in this cause are not, as a matter of law, liable in damages thereon, and also that the defendant is not entitled to recover damages resulting from the injunction requiring him to receive the publications of the complainants and transmit same through the mails as mailable matter of the second class; and it is further adjudged, ordered, and decreed that the motion for the ascertainment of damages upon such undertaking be, and the same is, hereby overruled and denied and the injunction undertaking aforesaid be, and the same is, hereby canceled and annulled.

It is from such portion of this decree as denies appellant's right to an ascertainment of damages, etc., that an appeal was taken as above stated.

*Mr. H. H. Glassie,* Special Assistant to the Attorney General, for the appellant.

*Mr. William S. Hall* and *Mr. Holmes Conrad* for the appellees.

Mr. Justice DUELL delivered the opinion of the Court:

Appellant, by his assignments of error, urges that the court below erred:

"(1) In holding that the complainants and their sureties on

the injunction undertakings are not, as matter of law, liable in damages thereon.

"(2) In holding that the Postmaster General is not entitled to recover damages resulting to him as Postmaster General from the injunction requiring the transmission of the publications of the complainants as second-class mail matter, instead of third-class mail matter.

"(3) In holding that the defendant, as Postmaster General, is not entitled to receive, under such injunction undertakings, the amount of postage which, as Postmaster General, he was restrained from collecting.

"(4) In holding that the injunction undertakings were not liable for damages suffered between the original decree in the court below and the decree upon the mandate of this court setting aside such original decree.

"(5) In directing that such undertaking should be canceled and annulled."

The position of the appellees, on the other hand, as we understand it, is, first, that, as it was within the power of the trial court to decide whether damages should be given the appellant, its action can only be reviewed if its judicial discretion has been improvidently exercised; second, that no damages can be recovered because no bond was asked or given on account of the injunction, which was finally vacated; and, third, that the damages sought to be collected are damages to the United States, which are not recoverable, because it was not and could not be a party to the action.

Before proceeding to the consideration of the alleged errors, it should be said that a stipulation as to damages has been signed by counsel for the respective parties. It shows that the difference between the postage at the pound and third-class rates, between the filing of the injunction herein and June 16, 1904, when the injunction commenced to operate, amounted to the sum of $6,880.86. The stipulation further provides "that such account may be taken as equivalent, to all intents and purposes, to a finding of fact of the auditor to the same effect upon a reference to ascertain what damages, if any, were suffered by the de-

fendant by reason of wrongfully and inequitably suing out the injunction herein, the question whether such damages should be recovered being reserved for the determination of the court."

This stipulation obviates the necessity for a reference to ascertain the amount of damages.

Turning now to consider the contentions of the parties, it may be said that, if the appellees are right in any one of the three points raised by them, it must follow that the appellant's assignments of error are not well taken. Such being the case, it will be best to examine the case from appellees' view point.

1. Should the decision of the trial court, refusing to order an accounting, or to give damages to the appellant, be reviewed by this court?

Ordinarily, where an injunction is vacated a reference is ordered to ascertain the damages. No damages may have been suffered, and, therefore, none may be recoverable, and yet so strong is the presumption that damages have been inflicted that a court rarely declines to order a reference. The argument upon which an appellate court has sometimes refused to disturb the ruling of the trial court that damages ought not to be recovered, and the bond prosecuted, is that the trial court has had the advantage of watching the conduct of the parties and the conduct of the litigation, and, therefore, is best able to determine the question. *Russell* v. *Farley,* 105 U. S. 433, 26 L. ed. 1060. But this reason is of little force where, as in the present case, the facts are set out in the pleadings upon which the hearing is had, and in due course the questions at issue come before the appellate court on appeal upon the merits. We see nothing in the present case to preclude us from reviewing the decision of the trial court. An undertaking given as a condition to the grant of an injunction means, and ought to mean, something. In the case at bar the question was as to what rate the appellees should have certain of their publications carried in the mails. True, they had had them carried for some years at a low rate. The Postmaster General did not seek to compel them to pay the higher rate for the past, but only for the future. They disputed the correctness of his ruling, and, in order to prevent him

from enforcing it, they secured an injunction. They could have suspended the publication during the pendency of the litigation, or could have paid the additional postage under protest, and, had they prevailed, Congress undoubtedly would have given them relief. They preferred to give an undertaking, and the measure of damages if they lost their case was not problematical, but clearly was the difference between the two rates of postage. They forced the defendant, acting in his representative capacity and for the government, to defend the action. They took the risks of litigation, and must have known what they were doing when they gave the injunction bond. If it were in reality, as in name, a contest between two individuals, the appellees' contention would be at once brushed aside. We see no valid reason why a different rule should be applied because one of the parties is the representative of the United States. The people may be better able to stand the loss arising out of the grant of the injunction than would be an individual, but that is no reason for applying a different rule. As well might it be urged that the relative wealth of two litigants should control as to whether one who had been damnified should be indemnified. Because appellees had had their publications carried for years at a lower rate than they were entitled to is no valid reason why they should have that right pending litigation. When they gave a bond they must have known that they were assuming a liability. As well might an indorser of a promissory note plead that he never expected to be obliged to make his indorsement good. We think there is little merit in this first objection to the enforcement of the undertaking.

2. The second ground urged by appellees is that no bond was asked or given on account of the injunction, which was finally vacated. In other words, that the injunction to obtain which they gave the bond in question ceased to be operative when the trial court signed the decree of March 10, 1903, which granted a perpetual injunction. Conceding the correctness of this contention, the appellees would still be liable for damages from May 31, 1902, to March 10, 1903, provided the general objection

that the appellant is in no event entitled to recover damages be held not well grounded.

But we do not think the bond ceased to be in force after the decree was entered making the injunction perpetual. The parties, by their actions, treated it as though it continued to apply. The appellant would, had any question been raised, have asked for a new bond, in which event the appellees doubtless would have conceded that the bond remained in force. When the main case was before this court, and later was taken to the United States Supreme Court, it was considered that the original undertaking was in force or a new one would have been required,—one other than the supersedeas bond then given.

Doubtless there may be found a class of cases where a final decree being entered, with a provision for a perpetual injunction, the bond given on the grant of a temporary injunction may not be held to be longer in force. This is not such a case, and the rules of the District supreme court are such that we think an injunction bond once given may continue until the termination of the litigation. Such was held to be the case in *Dodge* v. *Cohen,* 14 App. D. C. 582, 597. The facts in that case, while not identical with the facts of the case at bar, are so similar that we distinguish no material difference, so far as those facts relate to the injunction and bond. In that case a bond was given when an order was passed restraining the defendant from prosecuting certain suits at law, appointing receivers to take possession of the property in dispute, authorizing them to sell the same, and referring the cause to the auditor to state an account and distribute the proceeds of the sale. Some four years later a decree was entered, from which an appeal was taken. The decree was reversed, and, on the going down of the mandate, a reference was ordered to ascertain and report the damages. It was contended on the part of the parties who had given the bond that damages could not be assessed for any time after the date of the final hearing from which the appeal was taken. Upon appeal to this court their contention was overruled. It was said: "The injunction remained in force, and, as long as the injunction remained in operation, the undertak-

ing remained in force as a means of indemnity." We think that ruling is of equal force in the present case. The undertakings in both cases are almost word for word the same. Both injunctions were given before any decree was entered that was appealed from. The suit and the appeal are one proceeding, and, until a final determination of the suit, no action can be successfully brought on an injunction bond, though the injunction may have been dissolved. *Gray* v. *Veirs,* 33 Md. 159, 160. We agree with the statement of appellant's counsel, that "the life of the injunction is from the date of its original issuance to the date of the dismissal of the bill, by which its unlawfulness was determined." The undertaking covers the same period. As was well said by the former chief justice of this court in *Hamilton* v. *State,* 32 Md. 354, where it was urged that a supersedeas appeal bond took the place of a prior injunction bond: "Taking the appeal and giving the appeal bond as required by law had the effect of staying and suspending the operation of the order of dissolution, and of leaving the order granting the injunction in full force as if no order dissolving the injunction had passed. The defendant in those proceedings was not at liberty to proceed with the foreclosure of his mortgage or the collection of his rents during the pendency of the appeal; nor could he have sued the injunction bond after the order of dissolution, and before its affirmance by the court of appeals, for, after filing the appeal bond, and by that means staying and suspending the effect of the order of dissolution, the injunction was as operative as ever. * * * And, though the appeal bond was conditioned to prosecute the appeal with effect, and by breach of which the appellee became entitled to recover damages sustained by reason of the appeal, it is but *cumulative security* to the injunction bond, *except* as to the *costs,* on the appeal to which the appeal bond alone is chargeable."

3. It is further urged by appellees that the damages sought to be collected do not belong to the defendant, but to the United States, and that, as it was not and could not be a party to the suit, no damages can be collected. We think the answer to this contention is a simple one. The appellant is Postmaster Gen-

eral of the United States. His predecessor, against whom the suit was originally brought, was the then Postmaster General, and the bill of complaint so alleges, so designates him in the caption, and the answer admits it. Had he been sued as Henry C. Payne, with no averment as to his office, or as to his interest, duties, or powers in the premises, the bill would have been dismissed. He was made defendant because he was Postmaster General, and because, in pursuance of authority claimed by him as Postmaster General, he had given notice that he, in his official capacity, would do certain things which these appellees considered to be unlawful and against their personal interests. Henry C. Payne, the individual, had no more interest in the matter than any other citizen of the United States. The suit was against him in his official capacity; otherwise his successor in office, the present appellant, would be without standing and an intruder. Payne's executors or administrators could not have been substituted as defendants upon his death, for they were not authorized to collect and disburse the postal revenues. That duty devolved upon his successor in office. We think it is begging the question to say that the United States was not a party to the suit and could not be. That in one sense is true, but the courts have recognized that there is a class of cases where it is absolutely essential in the interests of justice that actions should in some form lie, in reality though not in name, against the United States, and therefore they have permitted such actions to be brought against the executive officers of the United States to prevent them from doing, or to compel them to do, something in their representative capacities which in reality affects the government's interest and in which the government's officer has no personal interest. This is one of those cases. It is the duty of the Postmaster Genertl to collect the postal revenues. When collected they are used to defray the expenses of the service. Appellant's counsel has referred to the statutes governing the duties of the Postmaster General and has summed up such duties most clearly. He says: "These postal revenues remain a distinct fund, and are denominated 'deposits.' The postal service is maintained out of its own revenues. All expenditures

not settled directly by postmasters are made by warrants of the Postmaster General drawn upon this fund of the postal revenues, and only when the postal revenues are insufficient to meet the current expenses does the Postmaster General make a requisition upon the Treasury pursuant to the appropriations provided to meet such deficiencies. The amount is then placed to the credit of the Postoffice Department and transferred by the Postmaster General to such assistant treasuries as may be necessary. Thus it will be seen that the postal revenues, even after collection, constitute a separate, distinct, and identifiable fund of which the Postmaster General is the supreme administrator, and which is not only collected, but disbursed, by him."

The conclusion he draws therefrom is logical and convincing, and we quote it: "It was as administrator or trustee of these revenues that the Postmaster General was enjoined at the instance of the complainants, upon the theory that he was about to make an unlawful charge which would inure to the benefit of those revenues. Just as the complainants, upon that state-. ment of the case, were entitled to a remedy against the agent doing the supposed wrongful act, so are they bound to indemnify that agent for the effect of that remedy when the act turns out not to be wrongful at all. It would be contrary to the most elementary principles of justice that the complainants, asserting a right against the defendant in one capacity, could escape the consequences of the assertion of that right upon the plea that, because it turns out that their claim of right was unfounded, they may insist that they sued the defendant in another capacity. The relief and the indemnity were reciprocal and commensurate. The Postmaster General was sued in his official capacity; he thereby suffered damage in his official capacity. Must he not be made good in his official capacity?"

It was, as we have seen, his duty to collect from the appellees the postage due from them. To wilfully fail to do so would have been negligence upon his part. When he was enjoined from making the collections it was his bounden duty to protect himself and the United States, whom he represented, just as it is the duty of any trustee or other person acting in a representa-

tive capacity. He is under obligations to collect and credit the United States the postage withheld from him by these appellees. He has no power to excuse them from such payment. Nay, more, there is a duty imposed upon him to use all lawful means to enforce their collection. When this postage was kept from him he was damnified, and being damnified he was entitled to indemnity. The undertaking was given for his protection, and to enable him, if his position was legal, to collect for the government, which he represented, the postage which through his representative, the postmaster, he was under a legal obligation to account for.

In his representative capacity, and as against these appellees, he is entitled to the withheld postage as damages. True, he must account to the United States for them when collected, but until he receives them he cannot turn over the amount of damages received. It seems to us his position is analogous to that of the defendants in *Andrews* v. *Glenville Woolen Co.* 50 N. Y. 282. It seems that judgments were recovered in the name of the Glenville company by persons claiming the right to use its name for that purpose. The defendant company was restrained from enforcing the judgments, the plaintiff giving an undertaking. The bill being dismissed, a reference was had to ascertain the damages, and it was contended, as here, that, as the defendant company had no interest in the result, it had sustained no injury. The court said: "If this objection was valid, it shows that the undertaking had no force or effect whatever, and that a party who is prosecuting a claim according to law, in the name of another person, may be enjoined in fact, though not by name, without having the indemnity which the Code purports to provide, in case it should result that there were no grounds for the injunction. Such a conclusion should not be drawn unless clearly required by law, for it would be not only exceedingly unjust to the party whose proceedings are enjoined, but would also liberate the applicant for the injunction from the wholesome condition which the law imposes upon him of giving security for the damages he may occasion, should his claim prove to be without foundation. It seems to me more reasonable to hold

that when proceedings, conducted by one party for his own benefit in the name of another, are restrained by an injunction not directed to the party in interest by his name, the damages and expenses incurred by him in procuring the discharge of the injunction should be presumed in law to have been incurred by the defendant on the record, and should be recoverable in his name for the benefit of the real party in interest."

To the same effect is the case of *Oelrichs* v. *Spain (Oelrichs* v. *Williams)* 15 Wall. 211, 21 L. ed. 43. Spain enjoined, in a certain proceeding, one Wetmore from dealing with a certain fund which he held as custodian or trustee for certain persons, one of whom, Hill, was not a party to the bill. Spain's bill was finally dismissed. Hill's child, who was his heir and legatee, filed a bill thereafter to assert his father's claim for damages occasioned by the granting of the injunction, and the securities on the bond given in the *Spain Case* were made defendants. A similar contention was made as in the case at bar. The court, at page 229, L. ed. at page 44, said: "It is true that neither Hill nor his representatives were parties to the bond of May or the bond of Oelrichs, and that they were not named in the writ of injunction issued upon the filing of the first bond. But Spain's bill averred that Wetmore held the fund in trust for Hill. Wetmore was an obligee in both bonds. The legal title to the entire fund was in him, and was never devested. * * * Wetmore, during his lifetime, and after his death his legal representatives, might have recovered upon the bonds at law *to the full extent of the damage touching the entire fund.* Such was his and their legal right."

We can see no reason why the principle laid down in these cases does not apply, even though the United States, and not an individual, is the party who is ultimately benefited by receiving the damages admitted to have been suffered through the issue of the injunction. Concluding, therefore, that the appellees' position is untenable, it follows that the appellant's assignments of error are well founded. Without further extending the scope of this opinion to include questions raised, but which, in our opinion, are not relevant or necessary to the determination

of the case, we conclude that the court below was in error in holding that, as a matter of law, the appellant was not entitled to damages, and in releasing the appellees and their surety from the obligations of the injunction undertaking, and in refusing to order a reference to ascertain the damages. As the amount of the damages has since been stipulated, it will be unnecessary to order a reference.

So much of the decree as was appealed from is reversed, with costs, and the court below is directed to enter a decree against complainants, and the surety upon the injunction bond, for the sum of $6,880.86, with interest from July 7, 1905.

*Reversed.*

An appeal to the Supreme Court of the United States was allowed March 22, 1906.

No. 1608.   Submitted February 14, 1906.   Decided March 7, 1906.