(113 So. 486).

## FIDELITY & DEPOSIT CO. OF MARYLAND v. WEST BLOCTON SAV. BANK.

### (2 Div. 364.)

Court of Appeals of Alabama. Oct. 26, 1926.

Rehearing Denied Dec. 14, 1926.

S. D. & C. D. Logan, of Centerville, for appellant.

J. F. Thompson, of Birmingham, for appellee.

RICE, J. This is an action brought by appellee against appellant as surety on injunction bond. The injunction enjoined appellee as mortgagee from foreclosing a certain mortgage executed to it by the Braehead Coal Mining Company, a corporation. The case is

stated by appellee's counsel substantially as follows:

"September 11, 1923, Braehead Coal Mining Company, a corporation, executed a mortgage to West Blocton Savings Bank (Appellee) to secure an indebtedness of $16,120 due September 11, 1924.

"This mortgage conveyed a lot of machinery used in connection with the operation of a coal mine, consisting of hoisting engine, steel boiler, together with fittings and connections of each, lot of tram cars, shop tools, coal washer, railroad rails, switches, hoisting rope, piping, ventilating plan, and engine operating washer, pumps, and other tools, machinery, fixtures, and supplies usual about a coal mine and also two coal leases, one by the University of Alabama and the other by the Alabama Mineral Land Company, these leases being the usual mining leases.

"There was default in the condition of this mortgage, and West Blocton Savings Bank, mortgagee, was in the act of foreclosing their mortgage, the foreclosure sale having been set for September 29, 1924, when the mortgagor and another filed their bill in the chancery court of Bibb county, Ala., against the mortgagee,· seeking to enjoin the foreclosure of the mortgage, and this injunction was served on the mortgagee on the morning of September 29, 1924, the day set for the foreclosure sale.

"On the filing of the bill the original fiat of the judge fixed the injunction bond of the complainant at $500. This injunction bond was dated September 29, 1924, and upon its approval the writ of injunction was issued out of the chancery court and served on the appellee.

"Thereafter on October 2, 1924, the respondent, West Blocton Savings Bank, in the chancery court made a motion before the judge of that court requiring the complainant to give an additional bond. Then the second injunction bond was executed, being a bond approved October 6, 1924.

"Thereupon the respondent in the chancery suit filed its motion to dissolve the injunction in said cause, and upon the hearing of said motion, the court, by decree dated November 3, 1924, dissolved the injunction.

"Thereafter this suit was filed by appellee, who was the mortgagee and respondent in said chancery suit. After demurrers had been sustained to counts 1, 2, and 3, the plaintiff in the court below, appellee here, amended its complaint by adding count 4, and the trial was had before the court without a jury on said count 4 and the general issue thereto, and resulted in the judgment which is appealed from.

"The items of damages sued for and proven consisted of six items, viz.:

"(1) Expenses of appellee in providing coal for operating boilers to furnish power to the pumps in keeping the water out of the mine. This consisted of $32.86 for two days, that is, the 29th and 30th of September, 1924; $576.20 for the entire month of October, 1924; and $57.61 for the first three days of November, 1924, this amounting to $666.67.

"(2) Expenses incurred in manning and operating pump and repairs to boiler, which totaled $85.20.

"(3) Interest on mortgage deed for the period of time when the foreclosure of the mortgage was enjoined, amounting to $124.55.

"(4) Minimum royalty necessary to be paid to prevent forfeiture of the leases from University of Alabama and Alabama Mineral Land Company for the time the injunction was in force, which amounted to $336, being at the rate of $280 per month.

"(5) Expenses of W. R. Young, president of the appellee bank, in preparing for the defense of the injunction suit and attending conference with counsel and court on the hearing, which amounted to $45.

"(6) Attorneys' fee to attorneys for representing the bank in getting the injunction dissolved, which was agreed to on the trial as being reasonably worth $250.

"The total damages which the mortgagee bank claimed to have sustained on account of the suing out of the injunction amounted to $1,507.42, but the total penalty of the two bonds was only $1,000, and therefore the judgment could only be for that amount, and that is the amount of the judgment from which this appeal has been taken."

■■ There was no error in overruling appellant's demurrer to count 4. A demurrer is not the proper mode of eliminating in a complaint nonrecoverable damages. Likewise there was no reversible error in sustaining appellee's demurrer to appellant's special pleas. They were addressed to the complaint as a whole, and were therefore no answer to count 4, considered as a whole, upon which count alone the case was tried. There was reversible error, however, in the trial court allowing the plaintiff below, appellee here, over the appellant's timely objection to the question and motion to exclude the answer; the evidence seeking to prove items of damages 1, 2, 3, and 4 as set out above, for the expenses of appellee in providing coal for operating boilers to furnish power to the pumps in keeping the water out of the mine, and for expenses incurred in manning and operating the pump and repairs to boiler and the interest on mortgage debt for the period of time when the foreclosure was enjoined, and of the minimum royalty necessary to be paid to prevent forfeiture of the leases from the University of Alabama and the Alabama Mineral Land Company for the time the injunction was in force. These were not proper items or elements of damages recoverable in this action. The law is well settled in this state by a long line of decisions that the measure of damages recoverable in an action on injunction bond is the fair and reasonable value of services rendered in procuring the dissolution of the injunction. Jesse French Piano & Organ Co. v. Porter, 134 Ala. 306, 32 So. 678, 92 Am. St. Rep. 31; Jackson v. Millspaugh, 100 Ala. 285, 14 So. 44; Bolling v. Tate, 65 Ala. 417, 39 Am. Rep. 5; Cooper v. Hames, 93 Ala. 280, 9 So. 341.

■ It is also well-settled law that as a general rule compensation for losses sustained by reason of injunction must be the actual, natural, and proximate result of the wrongful suing out of the injunction. Oelrichs v. Spain, 15 Wall. 211, 21 L. Ed. 43.

See, also, notes to 11 L. R. A. 578, and 34 L. R. A. (N. S.) 951.

So it may be stated as a general rule that upon the dissolution of an injunction nothing can be included or recovered as damages which is not the actual, natural, and proximate result of the injunction. No damages are therefore recoverable in an action on an injunction bond, unless they were considered as damages proximately resulting in consequence of the issuance of the injunction.

■■ From the undisputed evidence in this case not one of the damage items above enumerated was the actual, natural, or proximate result of the injunction. The injunction only enjoined for about 30 days the foreclosure of the mortgage. It did not enjoin the possession, management, or control of the mortgaged property otherwise than preventing a sale of it for foreclosure purposes. Moreover, the evidence of plaintiff below, appellee here, if it is to be believed, showed that the possession of appellee, mortgagee, was not disturbed or injured by reason of the injunction, but they continued in possession of it using it pending the injunction, just as they did before injunction issued, and just as they did after it was dissolved. Moreover, the evidence shows that, after the injunction was dissolved, the property was not sold at the foreclosure sale under the power of this mortgage, but that it was sold under orders and decrees of a bankrupt court, the mortgagor having been adjudged a bankrupt, and that the bankrupt court enjoined or prevented the sale under the power of the mortgage, and that appellee purchased the property at the bankrupt sale, and not under a foreclosure sale under the power of the mortgage. Each of the items of damages mentioned above would have been incurred had the injunction never issued. The evidence showed, without dispute, that the coal mine had not been operated for several months prior to the issuing of the injunction, and was not operated as a coal mine pending the injunction, or after it was dissolved, and there is no evidence to show that it would have been operated but for the injunction. It was shown without dispute that the boiler had to be operated to furnish power to the pump to keep the water out of the mine; that this was necessary, whether the mine was operated or not, to prevent destruction of the property; and, as stated above, that such expenses were incurred before and after the injunction, and there was no evidence to show that the expenses would not have been incurred but for the injunction, or that they were the actual, natural, proximate result of the injunction. What is said above is applicable to, and conclusive against, the items of damages as for expenses incurred in manning and operating the pump and in repairs to the boiler. Such damages were not the proximate result of issuing the injunction, and it is difficult to see how they were indirectly the result of the injunction. The same is true as to the item of interest on the mortgage debt for the period of time when the foreclosure of the mortgage was enjoined. There was no evidence to show that the interest on the mortgage debt could or would have been collected but for the injunction. In order for such items to be recovered, it was necessary to have evidence to show that the interest was lost to the plaintiff below, appellee here, as the actual, natural, and proximate result of the injunction, and of this there is no evidence in the record. Likewise the minimum royalty necessary to be paid to prevent the forfeiture of the leases from the University of Alabama and from the Alabama Mineral Land Company for the time the injunction was in force were not the actual, natural, and proximate result of the injunction. The lease contract itself provided that this minimum royalty should be paid in order to prevent the forfeiture of leases, and consequently it would of necessity have to be paid to prevent a forfeiture of the lease. The issuing or retention of the injunction had nothing to do with this item of damage. The trial court should have therefore excluded the evidence upon appellant's motion, which sought to recover these items of damages, and the trial court was in error in rendering judgment in favor of the plaintiff, appellee here, as for these items or damages.

■ The expenses of W. R. Young, president of the appellee bank, in preparing for the defense of the injunction suit, and attending conference with counsel and court on the hearing, were elements of the items of damages, which were recoverable in this suit; likewise the attorney's fee for representing appellee in getting the injunction dissolved, which was agreed on as being reasonably worth $250, was also a recoverable element of damages. The case being tried by the court without a jury, the judgment or the decree of the court below will be reversed and one here rendered which the trial court should have rendered. The judgment of the lower court is reversed, and one here rendered in favor of the plaintiff, appellee, for the sum of $295, with interest thereon from September 29, 1924, which is the fair and reasonable value of the services rendered in procuring the dissolution of the injunction. And let the costs of this appeal be taxed against the appellee.

Reversed and rendered.

PER CURIAM. Affirmed on authority of Fidelity & Deposit Co. of Maryland v. West Blocton Sav. Bank, 216 Ala. 465, 113 So. 489.